## THE PEOPLE *v.* JAMES JONES.

PROOF OF A CRIMINAL CHARGE.—In criminal cases the prosecution are required to prove two things. First, that a crime has been committed; and, second, that it was committed by the person charged, and by none other.

IDEM.—Without some evidence tending to show that a crime has been committed, the question as to the person by whom committed cannot arise.

PROOF THAT A CRIME HAS BEEN COMMITTED.—The fact that a crime has been committed cannot be proved by the extra-judicial confessions or the statements of the prisoner alone. There must be some evidence, or corroborating circumstances tending to show that a crime has been committed, aside from such confessions or statements.

EVIDENCE IN CRIMINAL CASE.—The prosecution in a criminal case cannot give evidence to show that the prisoner committed or attempted to commit another offense for the purpose of raising the inference that he is guilty of the crime with which he stands charged.

ENTIRE WANT OF PROOF OF A CRIME.—When there is an entire want of evidence of the *corpus delicti*, except statements made by the prisoner, the Court should direct the jury to acquit the prisoner.

EVIDENCE MUST BE CONFINED TO CRIME CHARGED.—If the defendant in a criminal case offers himself as a witness, the prosecution cannot ask him on cross examination whether he had not agreed to commit another offense distinct from that with which he stands charged. If he is asked such question, and answers in the negative, the prosecution cannot contradict him by another witness.

RULE AS TO EVIDENCE IN CRIMINAL CASE.—The fact that a Chinaman, who claims to have been robbed by a white man, cannot be a witness when the white man is on trial for the alleged robbery, does not change the rules of evidence either as to the admission of testimony or as to the proof necessary to convict.

*Per* SANDERSON, J. :

JURISDICTION OF SUPREME COURT IN CRIMINAL CASE.— The question whether a defendant in a criminal case is entitled to a new trial, upon the ground that the verdict is contrary to evidence, is one of law and not one of fact, within the meaning of the fourth section of Article VI of the Constitution.

APPEAL from the County Court, Placer County.

The defendant was sentenced to the State Prison for the term of fifteen years, and appealed from an order denying a new trial.

The other facts are stated in the opinion of the Court.

*Jo. Hamilton*, for Appellant. There was no proof of the *corpus delicti*, nor that such a person as Ah Po (the person alleged to have been robbed) ever existed. The *corpus delicti* must be proven. (Greenleaf on Ev., Sec. 30 ; Wharton's Criminal Law, 347 ; and Hale's Pleas of the Crown, 290.) The confessions and declarations of a defendant, admitting or declaring the commission of the offense, unless corroborated or accompanied with other proof, are insufficient to prove the body of the offense. (*People* v. *Hennessey*, 15 Wend. 147 ; *People* v. *Badgley*, 16 Wend. 53 ; *Hope's Case*, 1 City H. Rec. 150 ; *Guild's Case*, 5 Halstead, 163 ; *People* v. *Ruloff*, 3 Parker's Crim. L. 401 ; *Mayor, etc., of N. Y.* v. *Walker*, 4 E. D. Smith, 258.)

*J. G. McCullough, Attorney-General*, for the People. The criminal agency of the defendant may be inferred from circumstantial evidence or confessions, and why, as matter of legal principle, may not also the fact of robbery ? As Bishop says, if a defendant should not be convicted where no crime has been committed, so equally should he not be when he has not committed the crime, though somebody else has. Is there one measure of proof to sustain one proposition, and another measure to sustain the other proposition ? Is it not a rule of caution to Court and jury ? In such a case as this, direct evidence of the *corpus delicti* would be next to impossible. Under the laws of this State Ah Po could not testify. Slight corroborating circumstances, independent of the confessions, have always been held sufficient. (*People* v. *Badgley*, 16 Wend. 59.) We produced the best evidence in our power.

Has this Court jurisdiction in any criminal case to reverse a judgment on the ground that the weight of the evidence does not sustain the verdict ? (Constitution, Sec. 4, Art. VI.) The

words of the Constitution "questions of law alone" mean something. The debates in the Convention show that most of the members were opposed to any appeal in criminal cases. May not the clause have been inserted as a compromise, thus allowing appeals on questions of law, but prohibiting them on questions of fact?

By the Court, SAWYER, J.:

The defendant was convicted of the crime of robbery, committed by taking four ounces of gold dust from the person of a Chinaman named Ah Po. There was no evidence tending in the slightest degree to support the charge except extra-judicial statements by the defendant and a co-defendant of a somewhat loose character, made to one party, who was also arrested for the offense, and to another who was a feigned accomplice in another subsequent transaction, that they had taken eleven ounces of gold dust from some five to seven Chinamen working on a certain ravine, one of whom they called Ah Po; and evidence of acts subsequent to the alleged robbery, in connection with said feigned accomplice, showing that they were disposed to commit such offenses.

"The proof of the charge in criminal cases involves the proof of two distinct propositions: first, that the act itself was done; and second, that it was done by the person charged and by none other—in other words, proof of the *corpus delicti* and of the identity of the prisoner." (3 Greenl. Ev., Sec. 30.) In the regular order of proceedings, the first thing to be done is to prove the body of the offense—in this case, that the Chinaman, Ah Po, had in fact been robbed. The order of proof, however, is of no consequence, if the facts appear in evidence in the case. The confessions are competent evidence, so far as they go, and are therefore admissible.

Without some evidence or circumstance tending in some degree to show that Ah Po has been robbed, the question as to who robbed him cannot well arise. It is well settled in the United States, at least, that extra-judicial confessions of a

prisoner, without other proof of the fact that a felony has been committed, are insufficient to justify a conviction, and this "certainly best accords with the humanity of the criminal code, and with the great degree of caution applied in receiving and weighing the evidence of confessions in other cases." (1 Green. Ev., Sec. 217 ; 1 Bish. Crim. Pro., Sec. 501, N. 2, second part; *People* v. *Hennessey*, 15 Wend. 148 ; *State* v. *Stringfellow*, 26 Miss. 157 ; *Brown* v. *State*, 32 Miss. 450.) The following observations of the Court in *Sam* v. *The State*, 33 Miss. 352, are pertinent: "The main fact necessary to be established as the basis of the prosecution was that the house had been burned; for without that there could be no guilt in any one. After proof of that fact it was necessary to prove how it was done, and by whom; and these particulars could be established by any evidence which was competent in law and sufficient in its force to satisfy the mind. The rule with regard to proof of the *corpus delicti*, apart from the mere con-. fessions of the accused, proceeds upon the reason that the general fact, without which there could be no guilt, either in the accused or in any one else, must be established before any one could be convicted of the perpetration of the alleged criminal act which caused it; as in cases of homicide, the death must be shown ; in larceny, it must be proved that the goods were lost by the owner; and in arson, that the house had been burned ; for otherwise the accused might be convicted of murder when the person alleged to be murdered was alive ; or of larceny, when the owner had not lost the goods ; or of arson, when the house was not burned. But when the general fact is proved the foundation is laid, and it is competent to show by any legal and sufficient evidence how and by whom the act was committed, and that it was done criminally. Here the burning was proved apart from the prisoner's confessions, and the confessions were, therefore, properly admitted in evidence."

In *People* v. *Badgley*, 16 Wend. 53, while it was conceded that evidence of confessions alone, unsupported by corroborating facts and circumstances, is not sufficient to convict; and

that there must be evidence *aliunde* of the *corpus delicti*, it was said that "full proof of the body of the crime, the *corpus delicti*, independently of the confessions, is not required by any of the cases; and in many of them slight corroborating facts were held sufficient." (59.) A similar view was taken in *State* v. *Lamb*, 28 Mo. 219, but in both of those cases there are many facts and circumstances, other than the confessions, going to show that the offenses charged had in fact been committed, and we have no doubt that the defendants were properly convicted, or of the correctness of the principles stated by the Court. In this case, however, after a careful examination of the record, aside from the naked extra-judicial statements of the prisoners, we do not find a fact or circumstance tending in the slightest degree to show that a robbery had been committed on Ah Po, or any other person. There was nothing but their statements to show that anybody had lost any gold dust, or had been robbed, or put in fear, or that there was any party in that region by the name of Ah Po. There seem to have been two companies of Chinamen working on a ravine, to whom the prisoners referred in their statements; and a party doing business in the neighborhood testified that he was acquainted with those Chinamen; that they did business with him and sold their gold to him, but that there was no one among them by the name of Ah Po; and there is no other testimony to the contrary except that, in the statements of the prisoners, one of the Chinamen was called Ah Po. There is testimony showing that subsequent to the alleged robbery the prisoner, in connection with the principal prosecuting witness, who was a feigned accomplice, went out with guns and disguises on the night preceding their arrest, for the purpose of robbing a Chinaman's cabin, but abandoned the enterprise. This testimony tends strongly to prove that the defendant was bad enough to commit a robbery, but it in no degree tends to prove that Ah Po, or anybody else, had in fact, before and on another occasion, been robbed. The evidence itself was inadmissible and improperly admitted. It

72

related to another and entirely different transaction, and in no degree tended to prove the fact in issue. It is one of the first principles of the law of evidence that testimony must be confined to the issues. " This rule excludes all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute." (1 Green. Ev., Secs. 51, 52.) " Under this rule it is not competent for the prosecution to give evidence of facts tending to prove another distinct offense for the purpose of raising an inference that the person had committed the offense in question. * * * Upon the same ground it is not competent for the prosecutor to give evidence of the prisoner's tendency to commit the offense with which he is charged." (Roscoe's Crim. Ev. 81, and cases cited.) Much evidence of this kind was erroneously admitted under objection and exception. We do not see a fact or circumstance which tends to prove the body of the offense charged, aside from the loose statements of the prisoners, and these, neither as to the number, or identity of parties, nor the amount obtained, correspond with the offense as charged. There was, then, an utter want of evidence of the character required by the law on the essential point as to the body of the offense, and, in our judgment, the Court erred in refusing to direct the jury to acquit the prisoner on that ground, when asked to do so by defendant's counsel. " Whether there be any evidence or not, is a question for the Judge. Whether it is sufficient evidence, is a question for the jury." (1 Green. Ev. 49.) In this case there was no evidence of the *corpus delicti* of a character absolutely required by the law, and the Court should have so instructed the jury. It is not a question of weight of evidence, but of an entire want of evidence, as to one point, of a character essential to a conviction.

The defendant was examined on his own behalf. Upon the cross examination, the District Attorney asked, if he did not agree with Dake to go upon the line of the Pacific Railroad at some convenient point, near Gold Run, and when the Paymaster of the company should go up to pay off the hands, by

some obstruction throw the cars off the track, and rob him. Defendant's counsel objected to the evidence; the objection was overruled, and defendant excepted. He then denied any agreement of the kind, and all the matters to which the inquiry extended. The District Attorney, under objection and exception, afterwards called Dake, who directly contradicted defendant on all these points. This was error. The whole testimony related to a collateral matter. It was not cross examination upon any matter to which defendant had testified. Nor had there been any testimony upon the point before. Besides, it was plaintiff's own testimony upon a collateral matter, and he was not entitled to contradict it. The testimony of Dake was not rebutting to any testimony introduced by defendant, or to any testimony relevant to the issue.

In charging the jury the Judge, among other things, said : " The indictment in this case charges the robbery to have been committed on one Ah Po, a Chinaman. Under the laws of this State Chinamen are disqualified from being witnesses or giving testimony in any case in which a white man is a party ; hence in all cases like the one at bar the mouth of the party robbed is closed so far as the giving of testimony is concerned, as much so as if the robbery had been coupled with the murder of the party robbed. In case of robbery and murder the production of the dead body would not prove the robbery, and is there no way by which a robbery in such case can be proved ? The Court is of opinion there is. Law is said to be and is the perfection of human reason—not that every law is perfect, but as near perfection as human reason can make them under the circumstances of their enactment. Laws are intended to give equal protection and equal justice to all, without regard to class, race or color. In law the crime of robbery is the same whether perpetrated on a Chinaman or a white man. The law and the repeated decisions of Courts have established certain rules of evidence which will be adhered to in all ordinary cases; but the rules thus established are not so unyielding as not to be bent, when they come into contact with reason and justice, so as to suit the

case to which they are to be applied. These rules require the best evidence of a fact to be proved to be produced when it is possible to do so. If the best evidence cannot be produced, then secondary evidence is admissible. In the present case Ah Po, the person upon whom the robbery is charged to have been committed, would be the best witness to prove the robbery. But the law precludes his testimony, and hence what would be secondary testimony in ordinary cases becomes the best evidence in the case at bar."

We cannot but think that this portion of the Judge's charge had a strong tendency to mislead the jury. If the law has really established certain rules of evidence, the Court, as we conceive, is bound to adhere to them, not only " in all *ordinary* cases," but in *all* cases; and such rules cannot properly "be bent when they come in contact with" what may seem to the Court or jury, in the particular case in hand, to be " reason and justice, so as to suit the case to which they are to be applied." It may be, that some absurd tests, as to the competency of witnesses, have been adopted in our statute, by which testimony may, in many instances, be shut out, and justice thereby defeated; but, if this be so, it is no reason for convicting parties of the highest crimes known to the law without the testimony which the well established rules of the law require. This would be but attempting to remedy one species of injustice by inflicting injustice of another, and still more grievous character. It does not appear to us reasonable that a less measure of proof, or testimony of a less persuasive character, should be required to convict a man of the crime of robbery, when committed upon a China-man, than when committed upon a citizen of California, merely because a Chinaman is an incompetent witness; and for that reason it might be impossible to prove the body of the offense in accordance with the rules of evidence well established in the law. It would be much safer to suffer the inconvenience arising from an absurd test of the competency of witnesses till a more reasonable one shall be adopted by the law making power, than to attempt to remedy the incon-

venience by bending the law of evidence as to the character,
or measure of proof necessary to convict, to suit the supposed
exigencies of each case as it arises.    Many radical changes in
the law relating to the competency of witnesses have been
adopted within the last few years, and tests, which to many
jurists of the present day, at least, and probably will to all
of coming generations, appear absurd, have been abolished.
There is room for further improvement in the same direction.
The object of admitting the testimony of any class of wit-
nesses is to ascertain the truth ; and, to surely attain that
object, it is necessary to exhaust all sources of information.
A Chinaman knows the facts which he observes as well as
any other person, and can relate the facts within his knowl-
edge, if so disposed.    There can be no rational principle upon
which he should be prohibited from stating, as a witness, what
he knows, unless it be that he is notoriously untruthful, or
that his prejudices in favor of his own, and against other
races, are such as to make it doubtful whether the truth can
be extracted from him—that is to say, unless the possibility,
or even the probability, that he will often testify falsely is a
rational ground of exclusion.    But, if this be a rational ground
of exclusion, it would seem to apply, in a greater or less
degree, to people of all nations.    It is only a question of
degree, and not of principle.    Those who have been long
connected with the administration of justice, must be sensible
that, there is, in the course of judicial proceedings, a very
large amount of utterly false, or grossly perverted testimony
obtained from witnesses, now, and heretofore, competent.    Yet
the most notorious liar in the community, so far as compe-
tency is concerned, stands before the law upon an equality
with the most truthful.    His character for truth and veracity
may be impeached beyond the possibility of doubt, yet his
testimony goes to the jury, and they are to judge of its credi-
bility and weight.    This objection, so far as the principle
upon which the competency of witnesses rests is concerned,
lies against all classes of men alike, and, as before remarked,
it can, at most, be only a question of degree.    The juror is as

competent to judge of the credibility of one class of men as another. The same faculties are brought into exercise, and the same tests applied in both cases. By making all classes competent to state what they know, and leaving the credibility of the testimony to be determined by the jury, all the sources from which truth can be drawn will be open to examination, while, by the exclusion of certain classes, the very fountains of evidence are withdrawn from all scrutiny, and the truth, in very many cases, made absolutely unattainable. Can there be any rational doubt as to which test of competency will of necessity be most conducive to the evolution of truth? Where all civilized men are competent witnesses, without regard to character or race, there is a possibility, it is true, that, in some instances, the truth may not be obtained, but this is equally true where competency is limited to a particular class, and doubtless sometimes now results in practice; while on the other hand, with a large class rendered incompetent, in a very great number of cases, the truth may not only not be attained, but its attainment will necessarily be rendered absolutely impossible. In the nature of things, it would seem, that the very fact of the existence in our midst of a large class of people, upon whom crimes can be committed without fear of detection or conviction, and, therefore, with impunity, must tend to encourage the commission of crimes upon that class, and furnish temptations to begin a course of crime, and schools for novitiates, from which, in due time, more hardened and -experienced reprobates will graduate to exercise their skill upon a wider field of criminal enterprise. The testimony in *one of these three cases* now pending in which the *defendant* is concerned, actually shows that the fact of the incompetency of Chinamen to testify is not without its influence in stimulating bad men to the commission of crime. When told by the witness that the party robbed would recognize him, the prisoner replied that it would not matter if he did, for he could not testify against him. These are reasons, however, for changing the law as to the competency of Chinamen, as witnesses, and not for changing the rules as to the character

and measure of testimony necessary to convict, in cases where felonies are committed upon parties who are incompetent to testify against the perpetrators. The rules which require proof of the body of the crime, or some facts or circumstances tending to show that somebody has in fact been robbed, corroborative of the loose statements of the prisoners, we think eminently sound.

We should do injustice to the learned Judge who tried the case, if we should stop here; for his general conception of the law was correct, and he recognized the rule requiring proof of a corroborative character of the *corpus delicti*, other than the extra-judicial statements of the prisoners, and in other instructions given to the jury stated the rule correctly. Nor do we suppose it was his design to convey to the jury the impression so strongly as we have inferred it, of the propriety of making the rules of evidence yield to the necessities of the case, or of authorizing a conviction upon evidence of a character different from that required by the law in ordinary cases. That he could not have so intended, is manifest from other portions of the charge. But it is equally manifest that the language, as used, is liable to the construction, and liable to mislead a jury, and it must, we think, have done so in this instance. The statute requires the Judge to deliver his instructions in writing, and it is not surprising that a charge drawn up during the hurry and perplexities of a trial should be less guarded in the selection and arrangement of the language, than it would be, if prepared under circumstances more favorable to deliberation and accuracy.

The judgment must be reversed and a new trial had. And it is so ordered.

SANDERSON, J., concurring:

I concur in the judgment and what is said in the opinion, except so far as it implies, in respect to the jurisdiction of this Court, a distinction between cases where there is no evidence of a material fact and cases where there is some evidence, but

not enough to sustain the verdict. I think this Court has jurisdiction, on appeal in criminal cases, over the question whether the verdict is contrary to the evidence in the latter class of cases as well as in the former. I am further of the opinion that the question whether a defendant in a criminal case is entitled to a new trial upon the ground that the verdict is contrary to the evidence, is a question of law and not a question of fact within the meaning of the fourth section of the Sixth Article of the Constitution. But in view of the grounds upon which the decision of this case is put, a further and more particular consideration of the question is not essential at the present time.

CURREY, C. J., concurring:

I agree with what is said in the opinion of Mr. Justice SAWYER, except as qualified in the foregoing opinion of Mr. Justice SANDERSON, and therefore concur in the reversal of the judgment.