## THE PEOPLE *v.* SAMUEL FARRELL.

INSANITY OF DEFENDANT IN CRIMINAL CASE.—If, when a defendant in a criminal case is called for trial or brought up for judgment, a suggestion is made that he is insane, and there is any reason to suppose he is insane, the question of his insanity must be submitted to a jury.

IDEM.—In such case, if the jury find the defendant insane, it is not necessary that the verdict be vacated by another trial on the same subject before the Court can proceed with the trial of the guilt or innocence of the defendant.

IDEM.—In such case, if the jury find the defendant insane, and the trial is postponed, but is called again at a subsequent term, and there is still any doubt as to the sanity of the defendant, the Court must proceed as at first and try the question anew, and so on as often as occasion may require.

IDEM.—On all such trials the question is as to the present sanity of the defendant, and the former verdict may be received in evidence as tending to prove present insanity.

EVIDENCE OF INSANITY.—The verdict of a jury called to try the question of the sanity of the defendant, that he is insane, is conclusive that he is insane at the time it is rendered, and therefore admissible in evidence on his trial for the offense, as tending to show that he may have been insane when the offense was committed.

IDEM.—In proof of insanity under a plea of not guilty, evidence of the insanity of the defendant, both before and after the commission of the offense, is admissible.

EXPLAINING THE MEANING OF WORDS USED.—The rule that the intent of a defendant in a criminal case must be inferred from his acts and words, has been modified by the admission of the defendant as a witness. A defendant is now entitled to explain what he meant by words spoken.

DEMURRER.—Remarks on demurrer to an indictment.

APPEAL from the County Court, Placer County.

The defendant was indicted for an assault with an intent to commit a rape. The indictment was found December 6th, 1865. When the case was called, April 3d, 1866, upon a suggestion that the defendant was then insane, a special jury was impanelled to try that question, who found the defendant insane at the time. The case was then postponed. The defendant was afterwards arraigned for trial in September, 1866. On the trial the prosecution called as a witness, J. Retinger, who was a Deputy Sheriff. The woman upon whom the assault was alleged to have been committed had previously testified that it was committed in the night, and that she recognized the defendant by the light of a box of matches which he ignited by stepping on them, near the head of her bed. Retinger, when called, testified that as the defendant was being turned out of his cell one morning, he heard him tell Sexton, another Deputy Sheriff, that the woman had sworn false, because she had sworn the matches burned half an hour. He said that the defendant then stated the matches did not burn half an hour, because he put his foot on them. Sexton was then called for the prosecution, and said that on the occasion referred to by Retinger, the defendant asked him, Sexton, if he heard the lies that the woman swore to, and said she had sworn to a lie about the matches burning half an hour, and that Retinger replied: "They did not burn half an hour, did they? You put your foot on them, didn't you, Sam?" That the defendant answered: "Yes, that's so." The defendant was called as a witness on his own behalf, and his counsel asked him to state what he intended and how he intended to

be understood by the remarks sworn to by Retinger and Sexton. On the objection of the District Attorney, the testimony was excluded. The defendant was convicted and sentenced to the State Prison, and appealed from the judgment.

The other facts are stated in the opinion of the Court.

*Jo. Hamilton,* for Appellant. The Court erred in refusing to permit the former judgment of insanity to be received in evidence. (*People* v. *Olwell,* 28 Cal. 456.) The Court also erred in refusing defendant permission to explain his remarks to Retinger and Sexton.

*J. G. McCullough, Attorney-General,* for the People. The Court has no jurisdiction in a criminal case to reverse a judgment on the ground that the weight of the evidence fails to sustain the verdict. (Const., Art. VI, Sec. 4.) The finding of the jury on the preliminary issue of sanity, if adverse to the defendant, is not evidence against him on the trial of the main issue; nor when the finding is of insanity, should that be received in his favor. (*Freeman* v. *The People,* 4 Denio, 9 to 39.)

By the Court, SANDERSON, J.:

The indictment is faultless and the demurrer was properly overruled. Judging from the cases which come to this Court, it is becoming the practice in criminal cases to demur to the indictment, as of course, regardless of the question whether there is the slightest foundation for a demurrer or not. This practice is not to be encouraged. In civil cases it may be restrained by the imposition of costs, but no check can be applied in criminal cases except such as is afforded by a summary disposition of the demurrer and the expression of a decided disapprobation of the practice. The law as to pleadings in criminal cases has been repeatedly construed by this Court, and if it has not yet been made plain we may well despair of ever being able to reach that result. The indictment in this case is fashioned after the most approved prece-

dents, and not only responds to all the calls of the statute, but equally answers those of the common law. To discuss it would be to repeat what has been said in a multitude of cases, without the possibility of reflecting additional light upon the subject.

We find it unnecessary to consider the question whether the defendant is entitled to a new trial upon the ground that the verdict is contrary to the evidence, and hence the further question made by the Attorney-General in reply, to the effect that this Court has no jurisdiction, under the Constitution, to review the evidence in criminal cases. Where there are other grounds upon which the defendant is entitled to a new trial, a discussion as to the weight of testimony, if permitted by the Constitution, would be productive of no good; for upon a second trial the evidence may be substantially different.

As to the grounds upon which it is claimed that the verdict of the jury, which was called at a previous term of the Court to inquire into the sanity of the prisoner for the purpose of determining whether his trial upon the indictment ought to proceed at that term or be postponed, should have been admitted in evidence, the brief of counsel does not seem to be very explicit, but as there is some reason for supposing that the verdict was offered for the purpose of showing that the defendant was still insane, and therefore that his trial ought to be further postponed, and also for the purpose of showing that he was insane at the time the supposed offense was committed and therefore not guilty, we shall so assume.

An act done by a person in a state of insanity cannot be punished as a public offense, nor can a person be tried, adjudged to punishment or punished for a public offense, while insane. (Sec. 583 of Act concerning proceedings in criminal cases.) When a defendant is called for trial, or brought up for judgment, if there is any reason to suppose that he is insane the question must be submitted to a jury, either of the regular panel, or of another to be summoned for that purpose. (Sec. 584.) If the jury find the defendant insane the trial or judgment, as the case may be, must be postponed until he

becomes sane. (Sec. 589.) To authorize this proceeding there must be some foundation for supposing that the defendant is insane. Such was not the case here, however, so far as we can learn from the record. There was no suggestion to that effect before the trial was commenced, either by counsel for the defendant or for the people. Nor is it suggested that anything occurred subsequently calculated to inspire doubts as to the sanity of the defendant. On the contrary, the record shows that when the case was called at a previous day of the term for the purpose of ascertaining whether it was ready for trial and for the purpose of appointing a day for trial, the defendant and his counsel being in Court, the latter stated that the physical and mental condition of the defendant had so improved as to justify him in proceeding to trial at that term, and that the case was accordingly set for trial. Nothing further seems to have been said or done in relation to the matter until at the trial the verdict in question was offered in evidence on behalf of the defendant.

As already intimated, the views of counsel in this connection are not very clearly stated in his brief, but from what is said we infer that he intends to claim that it was error for the Court to proceed to the trial of the case without having first instituted some sort of judicial inquiry into the present sanity of the defendant, which would have resulted in a formal reversal or vacation of the previous judgment of the Court that he was insane ; or in other words, that the verdict and judgment of the previous term to the effect that the defendant was then insane operated as a bar to any further proceedings until formally vacated upon a further proceeding of some sort confined to the consideration of the same question. If such was the law, the proper time to make the question was before the trial was commenced. But such is not the law. The statute requires no such proceeding.

At the previous term, upon the finding of the jury that the defendant was insane, the Court made an order committing him to the custody of the officers of the Insane Asylum, pursuant to the provisions of section five hundred and eighty-nine. It

is provided in the five hundred and ninety-first section that when the defendant has become sane the person or persons to whose custody he may have been committed shall give the Sheriff and District Attorney of the proper county notice of the fact, and that the Sheriff shall thereupon proceed, without delay, to take him from the custody of such persons and place him in the proper custody until he be brought to trial or judgment. Whether this course was pursued in this case the record fails to show, but the presumption is that it was. But whether it was or not is of no consequence, for in either event the result would be the same. When a defendant once found insane is called for trial a second time, if there is any doubt as to his sanity, and the people demand a trial, the Court proceeds, as at first, and tries the question of sanity anew, and so on to the end, as often as occasion may require. Of course at all such trials the question is as to the present insanity of the defendant, and at all trials after the first the inquiry may commence with the proposition that he was insane at the time the former verdict was rendered admitted, for of that the verdict is conclusive, or which amounts to the same thing, the former verdict may be given in evidence as tending to prove present insanity, for having been found insane at the previous trial the presumption is that he is still insane, unless his insanity was accidental or temporary in its nature, or occasioned by the violence of disease. (1 Greenl. on Ev., Sec. 42.)

But the verdict was competent evidence upon the question whether the defendant was insane at the time of the commission of the supposed offense, especially in view of the statement of counsel that he proposed to accompany it with other evidence upon that point. In the proof of insanity under a plea of not guilty, though the evidence must relate to the time of the act in question, yet evidence of insanity before and after that time is admissible. (2 Greenl. on Ev., Sec. 690.) The verdict was conclusive that the defendant was insane at the time it was rendered, and therefore admissible as tending to prove that he may have been insane at the time the offense was committed. The verdict was rendered some time after

the act was committed, it is true, and may not have been enti-
tled to much weight as evidence; but that is a different ques-
tion, and no rule can fix, with precision, the limits of time
within which evidence of subsequent insanity on the score of
competency shall be received and beyond which it shall be
rejected. It appears from the other testimony in the case
that the defendant is liable to spells of insanity of greater or
less duration, when under the influence of unusual excitement,
arising from injuries to his head sustained while serving in the
army. To prove this condition was to give evidence tending
to prove insanity at the time alleged or at any given time, and
for the purpose of proving that condition it was competent to
prove periods of insanity at dates remote from each other and
from the particular date in question. Where the insanity
sought to be proved is of a temporary character or interrupted
by lucid intervals, which is apt to be the case where it results
from personal injuries acted upon by casual and exciting
causes, a wider range on the score of time should be allowed
to the testimony than in cases where the insanity is of a more
continuous and permanent character, and therefore its periods
of commencement and termination more clearly defined and
readily ascertained. But from the nature of the case no fixed
rules as to the period of time over which an inquiry of this
character should be extended can be established, and hence
the particular conditions of each case must be allowed to fix
the limits. To allow a wide range is certainly in keeping
with the humanity of the law, which always prefers the escape
of the guilty to the punishment of the innocent.

The Court also erred in not allowing the defendant to testify
fully as to what he said in the conversation with Sexton and
to explain his meaning to the jury. The rule that the intent
must be inferred from the acts and words of the party had its
foundation in necessity created by the rule which excluded
parties in interest from the witness stand. That necessity is
now removed by the abrogation of the rule which created it,
and the legal tenet that actions must speak for themselves and
words furnish their own interpretation, is much modified if not

wholly abrogated by the recent innovation upon the common
law by which parties are allowed to testify in their own
behalf.  Before that time there was no way of ascertaining
the motives and intentions of parties except by inference from
their acts and sayings, and all experience shows that they may
frequently, if not at all times, prove very imperfect guides.
The object of the recent changes, as we conceive, was not
merely to enable parties to disclose facts wholly within their
own knowledge, but to do in addition what theretofore had
been impossible, explain their acts and the motives with which
they were performed, and to explain, if need be, what they
meant or intended to be understood as meaning by what they
may have said in regard to any material fact.  It is presumed
that there are but few members of the legal profession who
have not, at one time or another, felt the harshness if not the
injustice of the rule which excluded parties from the witness
stand and closed the door to explanations which otherwise
could have been made and would have given a very different
color to the transaction.  Actions and words are liable to mis-
construction, as all human experience proves.  Actions appar-
ently suspicious become innocent when the motive with
which they were performed is understood.  Words are of a
very different import when spoken in earnest and when spoken
in jest, when imperfectly understood and when fully explained.
If under the new rule parties are to be kept in harness and
not allowed to explain their actions and words when they
admit of explanation, and when explanation is needed in order
to exhibit the whole truth, but half the evil which was felt
under the old rule has been removed.  It is no answer to say
that this enables a party to substitute a false motive for the
true one, or to convert words spoken in one sense into another.
If the argument proves anything, it proves too much, and
shows that the radical change which has been made is in all
respects founded in folly rather than wisdom.  For the truth-
fulness of parties when upon the witness stand we must
depend, as in the case of other witnesses, upon the obligations
of their oath and their reputation for truth and veracity.  If

these can be relied upon for the truth of statements made in reference to acts and words of which the eye and ear may take notice, they may for the same reason be accepted as guar-antees for the truth of statements made in respect to motives and intents of which the mind or inner man alone can take cognizance. Nor is there, in our judgment, any well grounded reason for apprehending that this rule will obstruct rather than advance the ends of justice. There is no more danger of imposing upon the jury falsehood or pretense in respect to motives and intents than there is of doing the like in respect to visible or external circumstances. The jury can as readily distinguish between the false and true in respect to the former as the latter. If the motive or intent assigned is inconsistent with the external circumstances it must be discarded as false. If, on the contrary, they are consistent, there is no reason why they may not be true.

As to the policy of the change which has been made it may be too soon to speak. That in a search for truth, whether in the course of judicial proceedings or in the prosecution of any other science, no source of information should be closed cannot be denied, on the score of theory at least. But what will be the practical workings of a given rule, whether it will embarrass or advance the ends intended to be subserved, can be tested only by experience. The law, like every other science, is progressive, and it is not to be presumed that its administration has yet reached its highest perfection. In civil cases the testimony of parties in interest has always been resorted to, more or less, in one form or another. Under the system of practice adopted at the outset in this State one party was enabled to call the other, and both were practically allowed to testify to ultimate facts, at least, by verifying their pleadings. This privilege was subsequently extended to probative facts with, so far as is known, satisfactory results. There is no reason why the rules of evidence in criminal cases should differ from those in civil cases. On the contrary, what works well in the latter cases ought for the same reason to work well in the former. The late change is but an extension

of a principle which has been found to work well so far as previously applied. Let it have a fair trial in the new field. If it works well, a further step in the right direction will have been taken ; and if not, the step can be readily retraced.

It is unnecessary to notice the objections to the instructions. At the outset the Court seems to have misapprehended the precise nature of the offense charged in the indictment, but the mistake will hardly occur a second time.

Judgment reversed and new trial ordered.