# THE PEOPLE OF THE STATE OF CALIFORNIA *v.* ROBERT TYLER.

<div style="float:right">35 553<br>84 509</div>

Indictment—Two Offenses.—An indictment for rape which charges the principal offense and an assault with intent to commit such offense, is not demurrable on the ground that it charges two offenses.

Impeachment of Witness.—It is not essential to the impeachment of a witness to prove by the witnesses called for that purpose that from his or her general bad reputation for truth and veracity they would not believe him or her under oath.

Appeal from the County Court of Nevada County.

The defendant was indicted, tried, and convicted for the crime of rape, alleged to have been committed upon the person of one Ellen Dorsey. The defendant demurred to the indictment, upon the ground, among others, that it charged two offenses. The demurrer was overruled, and defendant excepted. The defendant moved in the Court below for a new trial, which was denied, and thereupon appealed from the judgment and the order denying a new trial.

The other facts are stated in the opinion of the Court.

*J. C. Caldwell,* for Appellant.
70

*Jo Hamilton, Attorney General,* for the People.

By the Court, Sawyer, C. J. :

The point to the effect that the indictment charges two offenses, in view of the fact that it charges the principal offense, and also an assault with intent to commit such offense, is untenable.

Several witnesses were called to impeach the prosecuting witness' character for truth and veracity. One witness said, that he knew her reputation for truth and veracity; that it was bad; that she was a notorious liar, but he did not say whether from her reputation he would believe her under oath or not. The question does not appear to have been asked. Another witness, after stating that her reputation was very bad; that she was a notorious liar; that all the colored people who spoke of her reputation for truth and veracity, spoke of her as a notorious liar, being asked whether he would believe said Ellen under oath, said : " he could not say that he would not believe her under oath." Two others testified that her reputation was very bad; that she had the reputation of being a notorious liar, with the additional testimony that they would not believe her under oath. On the other hand, several witnesses testified that her reputation for truth and veracity was good, and that they would believe her under oath.

On this state of the testimony the Court charged the jury as follows :

" Evidence has been introduced tending to impeach the testimony of the prosecuting witness, upon the alleged ground that her reputation in the community for truth and veracity is bad, and her testimony, therefore, not entitled to credit. In order to establish this fact, it is necessary that the impeaching witnesses should testify to three several facts : First—That the reputation of the witness who is endeavored to be impeached for truth and veracity in the

community in which he or she resides is known to the impeaching witness. Second—That such reputation is bad; and, Third—That from such known reputation the impeaching witness would not believe him or her under oath."

To which charge defendant excepted.

The third clause of this portion of the charge is clearly erroneous. Although there is some conflict in the authorities upon the point—and Greenleaf says the weight of the American authorities is against the practice (1 Greenl., Sec. 461)—it has been often held that it is proper, after a witness has testified that he knows the general reputation of the witness sought to be impeached for truth and veracity, and that it is bad, to ask the question whether, from his knowledge of such reputation, he would believe the witness under oath. But we know of no case holding it essential to the successful impeachment of a witness that the impeaching witness should state that he would not believe him under oath. This would be wholly substituting the judgment of the impeaching witness for the judgment of the jury upon the issue as to the veracity of the witness sought to be impeached, and the opinions of witnesses are found, in practice, to be far from uniform in such cases. Under this instruction, if the last question, the only one of disputed admissibility, should not be asked, or when asked, if the witness should hesitate to say he would not believe the other under oath, the impeachment would necessarily fail. In this case the instruction virtually took the testimony of half the defendant's witnesses on the question of the veracity of the prosecuting witness from the consideration of the jury, although they testified that her reputation was very bad; that she had the reputation of being a notorious liar. With this testimony withdrawn, the weight, in numbers, at least, was thrown against the defendant on this issue, and, it may be, turned the scale in the minds of the jury. When evidence of this kind is introduced, the jury are entitled to consider the whole testimony, and determine the question of

veracity for themselves, without being bound by the opinions of impeaching witnesses. The question of veracity is one of fact for the jury, and it cannot be affirmed, as a legal proposition, that a witness is not successfully impeached, unless the impeaching witnesses testify that, from the general reputation of such witness, they would not believe him or her under oath.

For this error the judgment must be reversed and a new trial had, and it is so ordered, and remittitur directed to issue forthwith.

Mr. Justice RHODES expressed no opinion.