# THE PEOPLE OF THE STATE OF CALIFORNIA v. ROBERT TYLER.

RESTORING A REPEALED SECTION OF AN ACT.—When a general Act applicable to all the counties of the State is repealed as to a particular county, and a still later Act amends a section of said general Act so partially repealed, such amendment does not apply to or affect the said particular county as to which the said original Act had been before repealed.

TESTIMONY IN CRIMINAL CASES.—On the trial of one indicted for rape, testimony to prove that the defendant had beaten and harshly used the prosecuting witness at various times, is inadmissible.

IDEM.—If, on such trial, the defendant introduces testimony to impeach the character of the prosecuting witness for chastity, the prosecution may introduce testimony to support her general character for chastity.

TESTIMONY OF DEFENDANT IN CRIMINAL CASE.—If the defendant in a criminal case does not avail himself of his right given by the statute to testify in his own behalf, the District Attorney should not be allowed, in addressing the jury, to comment on his failure to testify, as an evidence of guilt.

DEFENDANT NEED NOT TESTIFY IN HIS OWN BEHALF.—A defendant in a criminal case is entitled to rest in silence and security upon his plea of not guilty, and no inference of guilt can properly be drawn against him from his failure to testify in his own behalf.

ADMISSION OF A DISTRICT ATTORNEY.—Admissions of a District Attorney as to

the acts of a prosecuting witness, made during a trial, are to be considered for all the purposes of the trial to which they are relevant in the same light as if they had been proved by testimony.

APPEAL from the County Court of Nevada County.

The defendant was a married man, and the indictment charged him with having committed a rape on Ellen Dorsey, a girl who lived with his family, on the first day of December, 1866.

The defendant introduced testimony tending to show that the character of Miss Dorsey for chastity was bad. When the defendant rested the prosecution offered testimony tending to show her character in that respect good, and the defendant objected, but the Court overruled the objection.

The defendant called as a witness a Mrs. Bond, but she was not in Court. The defendant's attorney then asked the Court for an attachment for the witness, as she had been subpœnaed. The District Attorney asked what counsel expected to prove by Mrs. Bond. Defendant's attorney replied that he expected to prove that while Miss Dorsey lived with her she went into her bedroom one morning very early, and found a man named Carter in bed with her, and both Carter and Miss Dorsey were in their night clothes. The District Attorney then admitted that such was the fact, whereupon the counsel for the defendant did not insist upon the presence of Mrs. Bond as a witness.

The counsel for the defendant asked the Court to instruct the jury that the admission of the above fact by the District Attorney must be taken for all purposes of the trial as an admission that went to the impeachment of Miss Dorsey, as well as to all other points or facts of this case to which said fact could have applied if it had been proved. The Court refused the instruction, and defendant's attorney excepted.

Miss Dorsey had testified on her cross-examination that she was not in bed with Carter. but had admitted that he

was in her room. The defendant, who was convicted and sentenced, appealed.

The other facts are stated in the opinion of the Court.

*J. I. Caldwell*, for Appellant, on the question of the evidence as to the reputation of Miss Dorsey for chastity, cited *People* v. *Reton*, 19 Wend. 569, and *People* v. *Hulse*, 3 Hill, 309.

*Jo Hamilton*, *Attorney General*, for Respondent.

The defendant having raised the issue of the chastity of the prosecuting witness, could not object to the testimony of the prosecution on that subject. (1 Greenl. on Ev., p. 78, Sec. 54; *Pain* v. *Tilden*, 20 Vt. 554; *Hodge* v. *Goodwin*, 15 Ala. 718.)

The Act approved April 2d, 1866, which enables persons to testify in their own behalf, does not mean that the jury can draw no inference from the failure of the defendant to testify. The defendant is at liberty to give testimony, but is not compelled to do so. When the testimony of the defendant's guilt is positive, and the defendant fails to explain or contradict it, the jury should be left to construe the silence of the defendant as unfavorable to him.

By the Court, SAWYER, C. J.:

The defendant was indicted for a rape, and convicted. The cause has been here before. (35 Cal. 553.) The fifteenth section of the Judiciary Act of 1863 provides, that "there shall be held in the several counties of this State terms of the County Courts commencing on the first Mondays of January, March, May, July, September, and November in each year." (Stats. 1863, p. 609, Sec. 15.) In 1864 an independent and special Act was passed, applicable to the County of Nevada alone, providing that in the County of Nevada the terms of the County Court shall commence " on the first Mondays of February, May, ~~~ust~~, and November of each

year." It also provides that "all laws and parts of laws, so far as they are inconsistent with the provisions of this Act, are hereby repealed." (Stats. 1864, p. 66.) This Act, it will be seen, does not purport to *amend* the general Act of 1863, but absolutely repeals it as to Nevada County, so that the general Act has thereafter nothing to do with Nevada County. In 1868 another Act was passed, amending section fifteen of the Act of 1863, which says that "Section fifteen of the above entitled Act is hereby amended so as to read as follows: 'There shall be held in the several counties of this State terms of the County Court commencing on the first Mondays of January, March, May, July, September, and November in each year,'" etc., (Stats. 1867–8, p. 688,) then adds a proviso not in the section as it before stood. The term in Nevada County, at which defendant was tried and convicted, was held in August, under the special Act of 1864, and defendant insists that this Act is necessarily repealed by the general terms of the subsequent Act of 1868, and that the term was, therefore, held in August without authority. But this is manifestly an erroneous view. The last Act only purports to amend section fifteen of the Act of 1863. The section amended falls into the former Act, and thenceforth constitutes a part of that Act. But the Act itself, before the last amendment, had no application to Nevada County, for the whole Act had been absolutely repealed as to that county. The amendment does not purport to extend its application, but to amend a provision of the Act itself, which would, thenceforth, extend to those Courts only to which the Act itself was before applicable. The object of the amendment is sufficiently apparent, upon comparing section fifteen, as it stood *before*, with the section as it stood *after*, the amendment. It will be found that the section, as amended, is a *verbatim* copy of the former section, with a proviso added excepting the County of Santa Clara from its operation, and prescribing a different time for holding the terms in that county. That is to say, the amendment was designed to except another county from the opera-

tion of the provisions of the Act, and not to extend the provisions to counties to which they were then inapplicable. The object of excepting Santa Clara from the operation of the provisions of a section which were before applicable to that county, was accomplished by an amendment of the section itself, instead of passing a special, independent Act for that county, and repealing the former Act as to that county, as was done with respect to the County of Nevada. It was simply designed to accomplish, in a different mode, the same end that was accomplished by the special Act of 1864 in relation to Nevada County. The Act of 1868 in no respect affects the Act of 1864. We so decided from the bench in a similar case from Solano County, *in re* Petty, but no opinion was then written.

There appear to be several counties in a similar situation, and we think it important to set the question at rest now.

Considerable evidence was admitted, under exception, tending to show that, while living with him, the defendant had, at various times, beaten and harshly treated Ellen Dorsey, upon whom the offense of rape is charged to have been committed. We do not see how such testimony could be relevant. It certainly did not tend to prove the offense charged. "It is one of the first principles of the law of evidence that testimony must be confined to the issues. 'This rule excludes all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute.'" (1 Greenl. Ev., Secs. 51, 52; *People* v. *Jones*, 31 Cal. 570.)

Whether the acts affecting the character of the prosecuting witness for chastity, given in evidence by defendant, were admissible or not, (see 3 Greenl. Ev. 214, and notes,) the giving of these in evidence by defendant, we think, put her character for chastity sufficiently in issue to justify evidence on the part of the prosecution to support her general character for chastity.

There is nothing in the charge given by the Court, of its own motion, of which defendant has any reason to complain.

But the new, interesting, and highly important question in the case arises under the Act of April 2d, 1866, entitled "An Act relating to criminal prosecutions," which provides as follows:

"SECTION 1.   In the trial of all indictments, complaints, and other proceedings against persons charged with the commission of crimes or offenses, the person so charged shall, at his own request, but not otherwise, be deemed a competent witness, the credit to be given to his testimony being left solely to the jury, under the instructions of the Court.

"SEC. 2.   Nothing herein contained shall be construed as compelling any such person to testify."   (Stats. 1865–6, p. 865.)

At the trial the defendant did not avail himself of the right conferred by this Act to offer himself as a witness on his own behalf.   During the argument of the case, the District Attorney called the attention of the jury to the fact that the defendant had not testified in his own behalf, and argued and insisted before said jury that the silence of the defendant was a circumstance strongly indicative of defendant's guilt.   Defendant's counsel objected to this course of argument, and requested the Court to require the District Attorney to refrain from urging such inference, but the Court declined to interfere, and intimated that the law justified the counsel in the course pursued.   Counsel thereupon continued to urge before the jury that the silence of the defendant was a circumstance tending strongly to prove his guilt, and the counsel for the prisoner excepted.

At the close of the argument of the case to the jury, the defendant's counsel asked the Court to give to the jury the following instruction: "The jury should not draw any inference to the prejudice of the defendant from the fact that he did not offer himself as a witness in his own behalf.   It is optional with a defendant to do so or not, and the law does

not intend that the jury should put any construction upon his silence unfavorable to him." The Court refused to give the instruction, and defendant excepted. The action of the Court in the premises is claimed to be erroneous.

The Act, under which the question arises, constitutes one of the advances recently made by our legislation in the law of evidence. The principle embraced in the Act was first adopted in Maine, we believe, and it has, as yet, so far as we are advised, found a place in the statutes of but few of the States. No decision under similar statutes has been called to our attention, and we are not aware that it has been the subject of judicial construction. The policy of such a statute has been considerably discussed by law writers and others, and, to our minds, the strongest objection that has been urged against it, is, that it places a party charged with crime in an embarrassing position; that, even when innocent, a party upon trial upon a charge for some grave offense may not be in a fit state of mind to testify advantageously to the truth even, and yet if he should decline to go upon the stand as a witness, the jury would, from this fact, inevitably draw an inference unfavorable to him, and thus he would be compelled, against the humane spirit of the common law, to furnish evidence against himself, negatively at least, by his silence, or take the risk, under the excitement incident to his position, of doing worse, by going upon the stand and giving positive testimony. The object of the statute is undoubtedly beneficent. It was designed to afford a party charged with crime, and who must necessarily be cognizant of the true state of the case, an opportunity to controvert or explain any fact that may appear to be against him. It was designed to facilitate the attainment of truth, and to advance the ends of justice, by opening the door, under certain wise restrictions consistent with the humane policy of the law, not to compel a party to criminate himself, to all the avenues and sources of truth.

We intimated our approbation of modern progress in the law of evidence in some other particulars in the case of *The*

*People* v. *Jones*, 31 Cal. 573, and we are favorably disposed to the Act now under consideration. We so intimated in the case of *The People* v. *Farrell*, 31 Cal. 583. But while we are hopeful that future experience will justify the wisdom of this important change in the law, we cannot deny that it has, as yet, not been in force sufficiently long to develop its practical workings. In order, however, that the results may answer the expectations of those legislators who adopted it, and the ends of truth and justice be promoted, the statute must be examined, construed, and enforced by the Courts, in the same liberal and beneficent spirit that prompted its adoption, otherwise it will become an instrument of wrong and injustice, if not of absolute and intolerable oppression; and in this spirit it is both our duty, and our pleasure, to construe and enforce it.

Upon an examination of the Act, we find that a person charged with an offense, "shall, *at his own request, but not otherwise*, be deemed a competent witness." It is optional with him, then, whether he will testify or not; and section two provides that "Nothing herein contained shall be construed as compelling any person to testify." This is but a re-enactment by the statute of that provision of our State Constitution, which says, no person "shall be compelled in any criminal case to be a witness against himself." (Art. I, Sec. 8.)

At the trial, by his plea of not guilty, the party charged denies the charge against him. This is itself a positive act of denial, and puts upon the People the burden of affirmatively proving the offense alleged against him. When he has once raised this issue by his plea of not guilty the law says he shall thenceforth be deemed innocent till he is proved to be guilty, and both the common law and the statu[e] him the benefit of any reasonable doubt arising evi-dence. Now, if, at the trial, when, for all t poses of the trial, the burden is on the People to the offense charged by affirmative evidence, and t endant is enti-

tled to rest upon his plea of not guilty, an infe●●●● of guilt could legally be drawn from his declining to go upon the stand as a witness, and again deny the charge against him in the form of testimony, he would practically, if not theoretically, by his act declining to exercise his privilege, furnish evidence of his guilt that might turn the scale and convict him. In this mode he would indirectly and practically *be deprived of the option which the law gives him,* and of the benefit of the provision of the law and the Constitution, which say, in substance, that he shall not be compelled to criminate himself. *If the inference in question could be legally drawn the very act of exercising his option as to going upon the stand as a witness, which he is necessarily compelled by the adoption of the statute to exercise one way or the other, would be, at least to the extent of the weight given by the jury to the inference arising from his declining to testify, a crimination of himself.*

Whatever the ordinary rule of evidence with reference to inferences to be drawn from the failure of parties to produce testimony that must be in their power to give, we are satisfied that the defendant, *with respect to exercising his privilege under the provisions of the Act in question,* is entitled to rest in silence and security upon his plea of not guilty, and that no inference of guilt can be properly drawn against him from his declining to avail himself of the privilege conferred upon him to testify on his own behalf; that to permit such an inference would be to violate the principles and the spirit of the Constitution and the statute, and defeat rather than promote the object designed to be accomplished by the innovation in question.

We are of opinion, therefore, that the Court erred in permitting the District Attorney to pursue the line of argument t●●●●● objection and exception were taken, and intimating its ●●●●●●●● of the ground taken, and, especially after what ha●●●●●●ired, in refusing the instruction asked on behalf of de●●●●● for the purpose of correcting any erroneous view that ●●●●●have been impressed on the minds of

Statement of Facts.

the jur▓▓We think such instruction proper in all cases where the defendant desires it.

We do not perceive why the fact admitted by the District Attorney with reference to the acts of Ellen Dorsey were not to be considered, for all the purposes of the trial to which they were relevant, in precisely the same light as if they had been proved by testimony, instead of admitted.

For the errors indicated, the judgment and order denying a new trial must be reversed and a new trial had.

So ordered, and the remittitur directed to issue forthwith.