[Crim. No. 1003.    Fourth Dist.    Oct. 5, 1954.]

THE PEOPLE, Respondent, v. CHARLES WILKIE MARTIN, Appellant.

Robert N. Reynolds, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was charged with and convicted by a jury of the crime of forgery of a fictitious name. The jury also found that defendant had suffered five prior felony convictions and served time therefor in prison. At the trial defendant refused the services of his counsel and proceeded with his counsel acting only in an advisory capacity. On appeal the same counsel was appointed by this court to represent the defendant.

His first claim is that the evidence was insufficient to support the verdict, mainly upon the ground that the check involved was not, in fact, fictitious, and that there was not sufficient evidence to show the defendant knew the name of the payee was fictitious.

A resumé of the facts indicates that on October 16, 1953, defendant was a patron of the El Cortez Hotel barroom, and had about $400 in front of him. He asked the clerk to cash a travelers' check (American Express Company) for $50, which he took from a booklet of similar checks. The hotel company stamped its name in as payee and the defendant, under the name of Vern Swindler, countersigned the check in the space provided and received the $50. The group of checks, including the one here involved, were signed "Vern Swindler" at the top of each check, as being the purchaser thereof. The check was deposited in due course and was later located in the bank clearing of the American Express Company by an employee searching for stolen travelers' checks. It was identified as one of several stolen from a Mr. Stang, in Seattle, Washington, agent of the express company. From this theft about $3,400 in travelers' checks, as well as $900 in cash, were taken. Stang testified that he did not sell any such checks to "Vern Swindler" or the defendant Martin, and identified the stolen checks by number.

Defendant was apprehended at Green's Café and Bar on October 17th, and was searched. He was found in possession of a passport in the name of Charles Wilkie Martin, and a press card containing the name "Vern Swindler." A book of travelers' checks was found in his possession similar to the check passed at the El Cortez Hotel. He was taken to the police station and was there seen endeavoring to hide the book of travelers' checks under the seat of the automobile as he was about to leave it. He told several conflicting stories as to where he obtained them. One was that he bought them because he was going to Mexico. A check was made of the

city directory, registration of voters, and other places to see if the name of "Vern Swindler" could be found in the city of San Diego, but it could not be located. Later, defendant told the officers he had stolen the checks from someone in Las Vegas, Nevada. He said he did not remember cashing the check at the El Cortez Hotel.

A Navy storekeeper, Mr. Laverty, testified he met defendant at Green's Café in the men's room, and he was counting a considerable sum of money; that he advised the defendant to leave the premises because several people were watching him count that money, and that defendant informed him that money meant nothing to him; that he had recently stolen $6,000 and did not care if he lost it; that he had thrown away a couple of thousand dollars that day; that he was able to obtain some more and he was preparing to leave the country; that defendant showed him a passport and stated that he wanted to make one more big haul before he left and invited the Navy man to line up something for him and he would split 50-50 with him. The Navy man then called the officers.

Testimony was then taken to establish the fact of the prior convictions. Defendant did not testify at the trial. His counsel made numerous objections for him during the trial and argued the case to the jury.

A mere recitation of the evidence indicates, at least, a prima facie showing that the alleged purchaser of the travelers' checks, i.e., "Vern Swindler," was a fictitious person or name, and that defendant signed and forged this fictitious name to the check for the purpose of securing money thereon, with knowledge of these facts. Defendant offered no testimony to refute this showing. The evidence fully supports the verdict of "guilty" of "forgery of a fictitious name."

A more technical question is presented by defendant's claim, which was also made at the time of trial, that the information charged the defendant with the crime of "forgery of fictitious name (PC 476) committed as follows:"; that he did feloniously make, utter, publish and pass a certain check, and order in writing for the payment of money which purported, on its face, to be countersigned by a certain person and individual named "Vern Swindler," when in truth and in fact said check was false and fictitious to the knowledge of defendant and there was not then and there, or at all, any such person. (It sets forth *in haec verba* the travelers' check involved.) It then charges that defendant, having said

check in his possession, did then and there feloniously utter, publish and pass the same as true and genuine, with intent to cheat and defraud the El Cortez Hotel, a corporation, and others; that said check was false and fictitious to the knowledge of the defendant, and that there was not then and there any such person or individual as Vern Swindler. It is contended that the crime of forgery of a fictitious name is not encompassed within the meaning of section 476 of the Penal Code, but under the evidence defendant should have been charged under section 470 of the Penal Code (forgery), and accordingly the verdict rendered thereon was null and void and acted as an acquittal of the offense charged, citing such cases as *People* v. *Arnarez*, 68 Cal.App. 645 [230 P. 193]; *People* v. *Arnett*, 129 Cal. 306 [61 P. 930]; *People* v. *Curtis*, 76 Cal. 57 [17 P. 941]; *People* v. *Smith*, 136 Cal. 207 [68 P. 702]; *People* v. *Eppinger*, 105 Cal. 36, 39 [38 P. 538]; and *People* v. *Prather*, 23 Cal.App. 721, 726 [139 P. 664].

The attorney general concedes that the facts in this case do not constitute the offense denounced by Penal Code, section 476, because it was established that the *payor* of the travelers' check, the American Express Company, was not a fictitious company, but was in existence at the time and that it was the *payee*, Vern Swindler, who proved to be the fictitious person. It is argued, however, that the allegations contained in the amended complaint sufficiently set forth the facts constituting the offense charged and apprised the defendant that he was guilty of violation of section 470 of the Penal Code although the information refers to section ''476 PC,'' and that the evidence produced fully justifies defendant's conviction of the crime of ''forgery of a fictitious name,'' as charged, and as found by the verdict of the jury, citing *People* v. *Adair*, 3 Cal.App.2d 323, 325 [39 P.2d 274], in which case the defendant was charged with ''forgery of a fictitious name'' and appellant there contended there was no such crime denounced by law. It was held that the specific acts were pleaded with sufficient clearness and the designation given the claimed offense was immaterial. It was likewise held that whether the signatures in question were forgeries of the name of existing persons or whether they were names of fictitious persons was immaterial, citing cases.

There is some confusion in the record. Some of his argument to the jury indicates that the prosecutor was relying upon section 476 of the Penal Code. Apparently, the trial

judge was somewhat confused himself in this respect, for he said to the jury:

"Now, Ladies and Gentlemen of the Jury, something has been said about the defendant being charged under the wrong section of the Penal Code. I am not saying one way or another whether this defendant committed this offense or not. That is not up to me. But the only thing I can say is that if, according to the evidence, the charge is under Penal Code Section 476 and it is a proper action, so I don't want you folks to go out in the jury room and say it should have been charged under some other section, because that is no concern of yours. Your only concern is whether or not this man committed this particular offense."

However, the trial court instructed the jury in the language of section 470 of the Penal Code relating to forgery of the name of a fictitious person, and apparently gave no instruction in the language of section 476 of the Penal Code.

The jury found the defendant guilty of committing the acts charged, "forgery of fictitious name." It does appear that defendant was sufficiently apprised of the nature of the charge against him, and it does not appear that the defendant was prejudiced by the erroneous designation "Sec. 476 PC" instead of Penal Code, section 470, in the amended information.

■ Complaint is made of the testimony of the Navy storekeeper, Laverty, concerning a conversation he said he had with defendant with reference to the $6,000 defendant said he had stolen, and wherein the asked Laverty to assist him in "one more big haul." The ground of the complaint is that this evidence had no bearing on the question of defendant's guilt of the charge set forth in the amended information.

It does not appear upon what theory the trial court admitted this testimony. It was held in *People* v. *Califro*, 120 Cal.App.2d 504, 515 [261 P.2d 332], that defendant's statement or admission of other independent crimes is inadmissible except such as may bear upon the intent or guilty knowledge of the defendant or to prove some material fact in reference to the crime charged. (See also *People* v. *Morani*, 196 Cal. 154 [236 P. 135]; and *People* v. *Jones*, 31 Cal. 565.)

There was some evidence in this conversation indicating the intended flight of the defendant, which might well have been admissible. (*People* v. *Hall*, 199 Cal. 451, 456 [249 P. 859].) In view of the convincing evidence of defendant's

guilt, we conclude that it was not prejudicial error to admit such testimony, and it would not be reasonable to assume that in the absence of it the jury would have acquitted the defendant. (Const., art. VI, § 4½; *People* v. *Burnett*, 21 Cal. App.2d 613, 620 [69 P.2d 1028].)

■ Prejudicial error is next claimed in respect to the sufficiency of the evidence to show lack of authority of the defendant to sign the name "Vern Swindler" to the check and the district attorney's argument to the jury that the evidence did show such lack of authority. The facts related and the allowable inferences deducible therefrom sufficiently show such lack of authority. In fact, defendant's own statement so indicates that when he admittedly signed that fictitious name to the check and admitted he had stolen the group of checks from the person of someone in Nevada. The evidence was sufficient to make a prima facie showing of the fictitious character of the name "Vern Swindler" in each of the places indicated on the check, and that defendant forged that name thereon. (*People* v. *Reed*, 84 Cal.App. 685 [258 P. 463]; *People* v. *Eppinger*, 105 Cal. 36 [38 P. 538]; *People* v. *Slattery*, 59 Cal.App.2d 451 [139 P.2d 105].) No prejudicial error resulted in this respect.

■ The evidence shows that testimony was admitted, without objection, to the effect that an officer informed defendant that a federal charge had been placed against him involving these checks but was being dropped and that if it was agreeable to the American Express Company, a petty theft charge might be charged against the defendant and a county jail sentence imposed. The officer then inquired of the defendant as to what his reaction would be to that. He stated that defendant replied he "would probably be willing to enter a plea to petty theft." This testimony was admitted on the theory that it showed a consciousness of guilt and was allowable under the case of *People* v. *Moody*, 93 Cal.App.2d 66 [208 P.2d 692].

■ In his argument to the jury the district attorney pointed out that an inference of consciousness of guilt could be drawn from the fact that defendant was "looking for a deal" and would be willing to "cop out to petty theft." The court ruled that this was legitimate argument to be made in reply to the argument of counsel for defendant that defendant had no knowledge that the check contained a fictitious name when he passed it, and that defendant had not forged

a fictitious name thereto. No prejudicial error resulted in this respect.

Next, complaint is made that the proper foundation was not laid for the admission of the transcript of the testimony of Mr. Stang taken at the preliminary hearing, in reference to the burglary of the book of travelers' checks from his office in Seattle, and his testimony to the effect that he never sold that book of checks to defendant or to one Vern Swindler.

As testified to by the district attorney, this witness was requested by letter directed to him at his office in Seattle to come to San Diego and testify at the trial of the defendant in the superior court. This letter was received in evidence without objection. By a letter written on his letterhead and postmarked "Seattle," Mr. Stang indicated he would come but stated that he had business commitments and would be unable to attend at the time the trial was set. A telegram was also similarly received from the witness stating that "If absolutely necessary" he could make arrangements to testify at another date if the county paid his expenses. These communications were claimed to have been received by the district attorney in due course and through the mail or Western Union Telegraph office. On the date of trial the witness failed to appear and the court admitted the letters, telegram and transcript of the witness's testimony taken at the preliminary hearing in evidence. A motion to strike them was denied. Complaint is made of this for the reasons expressed.

Under the rule laid down in Wigmore on Evidence, third edition, section 2153, page 612, ". . . There seems to be here adequate ground for a special rule declaring that these facts, namely, the arrival by mail of a reply purporting to be from the addressee of a prior letter duly addressed and mailed, are sufficient evidence of the reply's genuineness to go to the jury. Such a rule—varying slightly in the phraseology of different judges—seems now to be universally accepted."

The facts in the instant case are distinguishable from the facts related in *People* v. *Frank*, 193 Cal. 474 [225 P. 448], relied upon by the defendant. There was sufficient showing that the witness was out of the state and not available at the trial. The testimony of the witness was properly received in evidence under Penal Code, section 686.

Lastly, defendant claims that his constitutional rights under articles V and VI of the United States Constitution were violated because, in the instant case, when arraigned,

he refused to either admit or deny the five prior convictions of felony, but stood mute, and the court ordered the entry of a denial to each accusation. It will be observed that previously the court fully advised the defendant that under those circumstances he would be compelled to enter in the record that he denied such previous convictions and when the case came to trial the burden would be upon the prosecution to prove such prior conviction; that accordingly the jury would, by virtue thereof, be apprised of the fact that he had suffered such prior conviction. To this the defendant made no response. The jury found, upon proper proof, that the allegations of the amended information were true in this respect. The complaint is now that the jury erroneously became aware of his prior convictions and that therefore he did not have a fair and impartial trial. We see no merit to this contention. Section 1025 of the Penal Code provides that the refusal of a defendant to answer is equivalent to a denial that he has suffered such previous conviction. (See, also, Pen. Code, § 1158.) The procedure of charging prior convictions has long been established and its propriety has been upheld and accepted. (*People* v. *Coleman,* 145 Cal. 609, 610 [79 P. 283] ; *People* v. *Peete,* 28 Cal.2d 306, 319 [169 P.2d 924].)

Considering the evidence in this case we conclude that no miscarriage of justice resulted and the judgment of conviction should be affirmed.

Judgment and order denying a new trial affirmed.

Barnard, P. J., concurred.

A petition for a rehearing was denied October 18, 1954.