THE STATE OF NEVADA, RESPONDENT, v. DAVID M. HALL, APPELLANT.

MURDER—WHEN "THREATS" AVAILABLE IN DEFENSE. A person on trial for murder cannot avail himself of threats or menaces previously made against him by deceased, unless he at the time of the killing was actually assailed or had sufficient evidence to convince a reasonable person that he was in danger of incurring bodily injury or of losing his life at the hands of deceased.

ANTECEDENT THREATS ALONE DO NOT JUSTIFY HOMICIDE. In a murder case, where it appeared that threats to kill had been made by deceased against defendant some time before the homicide but that the fatal meeting with deceased had been sought by defendant for the avowed purpose of killing him, the court instructed the jury that all antecedent threats are dependent upon the facts at the time of the killing and in order to justify the homicide it must appear that at the time of the killing there was some action which would induce a reasonable man to believe that he was in danger of losing his life : Held, no error in instructing that there must have been some action on the part of deceased at the time of killing.

TIME FOR "IRRESISTIBLE PASSION" TO COOL. In a murder case, where the defense is justification on account of irresistible fear or passion caused by acts of deceased and without time to cool, the question for the jury to consider is whether there was time for a reasonable man to cool his passion or quiet his fears, not whether the one was cooled or the other quieted.

APPEAL from the District Court of the Fifth Judicial District, Nye County.

Defendant was indicted in August, 1873, for the murder of a person whose real name was unknown to the grand jury, alleged to have been committed on or about June 17, 1873, by shooting him with a pistol at Belmont. The main circumstances of the killing, as shown by the testimony, are stated in the opinion. It further appeared that the name of deceased was John Copeland, and that he was commonly known as "Black Jack."

The trial, which took place in September, resulted in a conviction for murder in the first degree, and defendant was sentenced to be hanged on October 17, 1873. He appealed from the judgment.

*P. H. Clayton,* for Appellant.

I.   The court erred in instructing the jury that there must have been some action on part of deceased at the time of the killing.   8 Kentucky, 487.

II.   The statement of facts, as recited in the instruction [recited in the opinion,] would not justify a verdict of murder in the first degree.   It is further objectionable, because it bears upon its face the impress of the opinion of the court as to the force and weight of testimony, and also because the latter part is without authority of law and calculated to confuse and mislead the jury.   25 Cal. 361; *State* v. *Millain,* 3 Nev. 409; *State* v. *Pierce,* 8 Nev. 291.

III.   The court erred in refusing to give the instruction asked by defendant [recited in the opinion.]   1 Wharton Cr. Law, 990.

*L. A. Buckner,* Attorney General, for Respondent.

By the Court, WHITMAN, C J.:

Appellant stands convicted of murder in the first degree, and objects that the jury were misdirected in certain instructions given and by the refusal of one offered by him.

The first instruction to be reviewed is in the following language: "No threats or menaces, made by the deceased against the defendant D. M. Hall, can avail Hall, unless he at the time of the killing was actually assailed or had sufficient evidence to convince any reasonable person that he was in danger of incurring bodily injury, or of losing his life at the hands of the deceased.   Whatever threats may have been made by deceased, they cannot be of avail to the defendant, unless at the time of the killing something was

done which would induce a reasonable man to suppose that
he was in danger of great bodily harm, or of losing his life.
All antecedent threats are dependent upon the facts at the
time of the killing; and in order to justify the homicide, it
must appear that at the time of the killing there was some
action which would induce a reasonable man to believe that
he was in danger of great bodily harm, or of losing his life."

There is no material conflict in the evidence, which tends
to show that about one year before the homicide the deceased
had at sundry times attacked appellant, and made threats to
take his life, both in his presence and elsewhere; that of the
threats made out of the hearing of appellant, he had been
informed; that on the day of the killing appellant casually
met the deceased as, in company with another person, appel-
lant stopped for a moment at a store while driving past; that
a short time after, he said to his companion, at the same time
taking a pistol out of his pocket, that he had a mind to go
back and kill that man. Nothing, however, was done; the
parties accomplished the purpose of their drive, and in half
an hour more or less appellant returned to the store of one
Vollmer, when he said: "There is a man in town who
threatened to kill me on sight; I don't think I will take the
chances; I think I will go and kill him." Vollmer "told
him not to do it; to let him alone; that the teams would go
out in a short time again, perhaps day after to-morrow;" but
appellant said "he would not take any chances, as the man
was watching for him two or three times under oath to kill
him." Appellant then walked to a neighboring store; shot
and killed deceased, who at the time was helping to unload
a wagon and who made no demonstration, whether hostile
or otherwise, and uttered no word save, when appellant
after the shooting said "You have threatened my life and
are a damned thief" to say, "No, no, no."

The specification of objection to the instruction is, that
the court "erred in instructing the jury that there must

have been some action on the part of the deceased at the time of the killing." The authority cited to sustain this objection really overturns it. "* * * The threats of even a desperate and lawless man do not and ought not to authorize the person threatened to take his life; nor does any demonstration of hostility short of a manifest attempt to commit a felony justify a measure so extreme. But when one's life has been repeatedly threatened by such an enemy, when an actual attempt has been made to assassinate him, and when after all this members of his family have been informed by his assailant that he is to be killed on sight, we hold that he may lawfully arm himself to resist the threatened attack. He may leave his home for the transaction of his legitimate business or for any lawful or proper purpose; and if on such an occasion he casually meets his enemy, having reason to believe him to be armed and ready to execute his murderous intentions and he does believe and from the threats, the previous assault, the character of the man, and the circumstances attending the meeting he has the right to believe, that the presence of his adversary puts his life in imminent peril, and that he can secure his personal safety in no other way than to kill him, he is not obliged to wait until he is actually assailed. He may not hunt his enemy and shoot him down like a wild beast; nor has he the right to bring about an unnecessary meeting in order to have a pretext to slay him; but neither reason nor the law demands that he shall give up his business and abandon society to avoid such meeting." *Bohannon* v. *Commonwealth*, 8 Bush. (Ky.) 488–9. The instruction was given in view of the uncontradicted evidence, that the meeting was not casual but was sought by appellant for the avowed purpose of killing deceased. To declare the instruction erroneous in such view, would be to indorse the doctrine repudiated in the case quoted and to hold that the appellant might "hunt his enemy and shoot him down like a wild beast."

The following instruction is claimed to be erroneous on several grounds: 1st, that the statement of facts does not constitute murder in the first degree; 2d, that it indicates the opinion of the judge on the weight of the testimony; 3d, that the latter portion is calculated to mislead the jury. This is the instruction: "If the jury believe from the evidence that the defendant, D. M. Hall, on the day the homicide is alleged to have been committed in the indictment, rode out to East Belmont or to the mines with August Vollmer, about one-hour before the homicide is alleged to have been committed in the indictment; and while on the way out to said mines, the defendant drew out his pistol or a pistol and said to August Vollmer, 'I have a notion to go back and kill the man alleged to have been killed in the indictment;' and that after the defendant having made such remark he, the said defendant, went out to the mines with said August Vollmer, and returned to the town of Belmont, Nye County, State of Nevada, with said August Vollmer; and that as soon as said defendant returned to said town of Belmont, he, said defendant, in front of Vollmer's store, said to Adolph Vollmer 'that there was a man in town who had threatened to kill him, Hall, and that he, Hall, would not take any chances, and that he, Hall, would go and kill him,' the man alleged to have been killed in the indictment, and that the defendant, Hall, did within two or three minutes thereafter kill the man alleged to have been killed in the indictment, at a time when the person alleged to have been killed in the indictment made no hostile demonstration toward the defendant, Hall; the jury are instructed to find the defendant guilty of murder; and if the jury believe that the defendant resolved to take the life of the person alleged to have been killed in the indictment before the fatal shot was fired, they are instructed to find the defendant guilty of murder in the first degree."

State *v.* Hall.

Upon inspection, and as before keeping in view the undisputed facts, no error appears. The same may be said with regard to the other instructions given and objected to, without detail of review.

The court refused this instruction offered by appellant: "If the jury believe the above defendant was assaulted in a violent and deadly manner by Jack Copeland or Black Jack a year or more anterior to the homicide; and that Jack Copeland made threats to take the life of the above defendant, and that the attacks or threats excited fear or passion in the above defendant, they are instructed that 'The law assigns no limits within which cooling time may be said to take place.'"

Waiving the point that the kind of fear or passion which will excuse a homicide is insufficiently stated and that the instruction is generally drawn with dangerous looseness, and to come to what was manifestly intended as its point, that is the last sentence; the giving without explanation would have been to mislead the jury. True, the law fixes no definite time as a general rule within which an irresistible passion may cool or a reasonable fear abate; that must depend upon the circumstances of each case. An hour has been held sufficient, also a portion of a day for passion to cool; and it is always held that, if there has been cooling time before a homicide, the killing is still murder, though in fact the passion has not cooled. "So, when anger provoked by a cause sufficient to mitigate an instantaneous homicide has been continued beyond the time, which in view of all the circumstances of the case may be deemed reasonable, the evidence is found of that depraved spirit in which malice resides." *State* v. *McCauts*, 1 Spears. 390. The question for the jury to consider was, whether there had been time for a reasonable man to cool his passion or to quiet his fears —not whether the one was cooled or the other quieted; as, says the author relied on by appellant, "However great the

provocation may have been, if there be sufficient time for the passion to subside and for reason to interpose, the homicide will be murder. * * * The law assigns no limits within which cooling time may be said to take place. Every case must depend on its own circumstances; but the time in which an ordinary man in like circumstances would have cooled, may be said to be the reasonable time." 1 Wharton, 990.

To have given this instruction would have been error, as tending to distract the mind of the jury from the proper issue, by giving them an abstract fragment rather than the concrete whole, of the law upon the point involved.

The judgment is affirmed, and the district court directed to fix a day for carrying the sentence into execution.