## THE STATE OF NEVADA, Respondent, *v.* ALEXANDER COHN, Appellant.

Arson—Evidence of Over-Insurance to Show Motive. In a criminal prosecution for arson in the second degree under section 57 of the Crimes Act, where the testimony was all circumstantial: *Held*, that evidence of an over-large insurance upon the goods of the accused destroyed by the fire was entirely competent as tending to show a possible or probable motive—such motive being a material link in the chain of circumstances.

Motive as a Circumstance of Evidence. Motive does not of itself prove guilt; nor on the other hand is the prosecution bound to conclusive proof of guilt before motive can be considered ; but motive is a unit contributing to make up the sum total of proof.

Arson—When Insurance may be Proved by Parol. When, in a prosecution for arson, the fact of a belief on the part of the accused that he was over-insured became material, as tending to show a motive and thus making an important link in the chain of circumstances: *Held*, that the place and amount of such insurance might be proved by parol, without producing the, policy of insurance.

Extent of Cross-Examination of Accused. Where a defendant in a criminal case offers himself as a witness on his own behalf, he is to be held and treated so far as an ordinary witness for the defense that he can be cross-examined, and in the discretion of the court recalled for further cross-examination.

State v. Cohn.

PROSECUTION CANNOT MAKE ACCUSED ITS OWN WITNESS.  Though an accused
    person may become a witness in his own behalf and thereby subject himself
    to cross-examination, the prosecution cannot make him, against his consent,
    its own witness.

ACT ESTABLISHING BOUNDS AND EXEMPTING JURORS NOT UNCONSTITUTIONAL.  Where
    in a criminal case it was objected that the accused was unconstitutionally
    deprived of a common law jury by operation of the act allowing bounds to
    be fixed by judges and exempting persons residing outside thereof from
    jury duty on the payment of $25, (Stats. 1873, 128):  Held, that, however
    pernicious the system adopted might be, it was still but an exercise of a
    legitimate legislative power of exemption and therefore not unconstitu-
    tional.

EXCUSING GRAND JUROR BY MISTAKE AND RECALLING HIM.  Where a grand juror
    was inadvertently told by the judge that he was excused, but before any
    order excusing him was entered, the mistake was corrected and he was
    recalled and participated in the proceedings:  Held, that the court had the
    undoubted right to correct the mistake.

RIGHT TO TRAVERSE CHALLENGE TO GRAND JUROR AFTER WAIVER OF TRAVERSE.
    Where a grand juror was challenged by an accused person and the district
    attorney waived the right to traverse it; and the court ordered the juror
    not to be present at any consideration of the charges against accused; but,
    it afterwards appearing that he had inadvertently been present for a few
    minutes, the district attorney was allowed to call the grand jury into court
    and then traverse the challenge and show it to be groundless:  Held, that
    it was within the discretion of the court to allow the district attorney to
    traverse the challenge after he had originally waived it.

WHO IS " PROSECUTOR " IN A CRIMINAL TRIAL.  A prosecutor is one who instigates
    the prosecution by making the affidavit upon which the accused is arrested;
    so that the person named in the indictment as the owner of the property,
    in respect to which the alleged crime is charged to have been committed,
    is not necessarily the prosecutor.

APPEAL from the District Court of the Eighth Judicial
District, White Pine County.

The defendant was charged by the indictment with the
" crime of arson in the second degree, committed as follows,
to wit: That the said Alexander Cohn, at the County of
White Pine, State aforesaid, in the day time on the twenty-
seventh day of June, A. D. 1873, that certain building, to

wit: a building situate on the east side of Main street in the town of Hamilton, county and State aforesaid, known and called the "Jackson House," then and there the property of one Andrew Jackson of said County of White Pine, State aforesaid, feloniously, wilfully and maliciously did set fire to and the said before described building by such firing as aforesaid, feloniously, wilfully and maliciously did burn," etc.

The indictment was presented on October 8, 1873. On the day previous, when the grand jury was empaneled, the defendant by his counsel challenged Andrew Jackson and W. J. Smith on the ground that they were prosecutors against defendant; and, upon the district attorney stating that he had no objection to said jurors being instructed not to take part in the investigation of the charges against the accused, the challenge was allowed and the jurors directed not to participate in such investigation. But it afterwards appearing that said Smith by inadvertence had been present in the grand jury room during the examination of a witness against defendant, the grand jury was again brought into court and the district attorney traversed the challenge to Smith and Jackson; whereupon, the defendant and his counsel being present and declining to allege any fact going to show that said jurors were prosecutors against defendant, and it appearing to the court that they were not prosecutors, the challenge was overruled.

It appeared on the trial that the fire, which defendant was charged with having caused, consumed several houses, one of them the house in which defendant had a stock of goods consisting chiefly of cigars and tobacco, and another the "Jackson House" referred to in the indictment. The stock of goods was insured, and to prove this fact the prosecution called Morris Cohn, defendant's brother and partner, who testified that the policies were in San Francisco in the hands of creditors, to whom they had been assigned. De-

fendant objected to any proof by the witness of the contents of the policies on the ground that the policies themselves were the best evidence. The objection was overruled and defendant excepted. The witness then stated that there were three policies for $3000 in each of the "Commercial Union," "Fireman's Fund" and "State Investment" insurance companies.

On defense the accused offered himself as a witness in his own behalf and testified at length. He was then cross-examined by the prosecution; and no objection was made at the time to his cross-examination. He was then reëxamined in chief. After the defense rested, the district attorney asked permission to recall the defendant for further cross-examination in order to lay a foundation to impeach his testimony. Defendant objected on the ground that the State should have exhausted its cross-examination before the defendant rested, and on the further ground that the recall under the circumstances would be making the accused a witness against himself without his consent. The objections were overruled and the defendant excepted.

It further appeared in the case that in accordance with the provisions of the statute of March 5, 1873 (Stats. 1873, 138) the district judge on March 24, 1873, made an order that "all persons residing more than fifteen miles from the court house of White Pine County may be exempted from serving on grand or trial juries, upon complying with the conditions prescribed by said act," and that by operation of said act and order a number of persons, otherwise liable to jury duty, were exempted therefrom.

The result of the trial was the conviction of the defendant; and a motion for new trial having been overruled, he was sentenced to confinement in the State prison for the term of seven years. He appealed from the order overruling his motion and from the judgment.

*Thomas H. Wells*, for Appellant.

I.   The facts alleged in the indictment do not constitute the crime sought to be established by the proofs—that is to say, arson in the second degree, as defined by section 58 of the crimes and punishment act.   And if it be said that the indictment was good under section 57 of the same act, then the verdict should have been set aside and a new trial granted, because the *probata* did not support the *allegata*, and also because the court erred in its instructions in proceeding upon the theory that the indictment was under section 58.   The indictment did not mention any insurance or any intent to injure or defraud any insurer; yet the indispensable basis of all essential proof in the case, to show that defendant burned the "Jackson House," was to show that he burned his own, it being at the time insured, and that he did it to defraud his insurers.   But as the indictment did not make any allegation as to insurance, we insist that no proof should have been admitted as to defendant's insurance, or the character, extent or value of his stock on hand; nor should the court have charged, as it did, in reference thereto.

II.   Proof of motive alone is not sufficient to convict a man of any crime; but if it be desired to adduce proof of motive specially—proof other than that which, establishing the *corpus delicti* and connecting the defendant with the perpetration of the offense, tends also to disclose motive on his part for doing the alleged wrongful act—some foundation for its introduction must be laid in the allegations of the indictment.   See 10 Peters, 209; 2 Bishop's Crim. Law, Sec. 12; 2 Sumner, 209; 2 Bishop's Crim. Pro. Sec. 35, 45; 1 Sumner, 375; 28 Cal. 65; 29 Cal. Rep. 259; Burrill's Cir. Ev. 312 *et seq.*; 3 Chit. Cr. Law, 1126, 1036, and cases there cited; 32 Cal. 161.

III.   There was error in permitting the State to prove by oral testimony the facts which should have been proved by

the policies of insurance. No foundation had been laid for the admission of oral evidence; the policies themselves, as the best evidence, should have been produced. They might, upon production, have been found to be invalid or improperly executed.

IV. An accused person cannot be compelled to testify against himself, and therefore cannot be legally put under cross-examination at any time or at any stage of the trial. It is his constitutional right that he shall not be compelled to give evidence against himself. The statutory provision that a defendant *may* testify in a criminal trial on his own behalf, does not in the least impair or relax the rule of fundamental law, that he shall not be required to testify *against* himself. The object of a cross-examination of a defendant is to weaken what he has testified to against the State and to get out of him something favorable to the State, and consequently against himself.

V. The State had no right to recall defendant, after the defense had rested, and again put him under cross-examination. The evidence thus elicited, if legitimate cross-examination, ought to have been elicited before defendant rested. But it was just as much a violation of his constitutional right to be thus called and examined, with a view of laying the foundation, from his own testimony, of impeaching him, as it would have been to ask him to testify in a direct form against himself. When an accused person will or will not testify, and what he will testify and what he will not testify, are all matters left to his election; and when at any stage of examination, evidence is elicited from him under his objection, he is *compelled to testify*.

*W. F. Anderson*, also for the Appellant.

I. Defendant did not have a fair and impartial jury obtained by means known to the common law; but under the

operation of the statute of March 5, 1873, in relation to the fixing of limits by judges, and the exemption of jurors living outside of such bounds, the jury was in effect selected by the judge himself.

If this act be valid the judge is invested with the power to change his lines and make them as eccentric as may be his humor, and the sacred right of jury trial will be imperilled. As well might the statute at once provide that all persons who are able to pay $25 per annum shall be excused, and their duties devolve upon those idle or worthless persons to whom $3 per day is an object; and particularly so with the chances of larger compensation under certain circumstances.

II. On the empanelment of the grand jury the accused interposed challenges to the grand jurors Jackson and Smith on account of their being active prosecutors of the case. These challenges were confessed by the district attorney, and Jackson and Smith were directed, according to the statute, not to take part in the investigation of the charges against Cohn. It appears, however, that, notwithstanding the order, Jackson and Smith were present in the grand jury room while the charges against the accused were being considered. It is true the grand jury was ordered into court and, upon the disclosure of these facts, the district attorney was allowed to traverse the challenges which he had previously confessed; and the court directed Jackson and Smith to remain in the grand jury room and participate in the investigation of the charges against defendant; but in this proceeding, both the district attorney and the court appear to us to have stultified themselves.

*L. A. Buckner*, Attorney General, for Respondent.

By the Court, WHITMAN, C. J.:

The indictment in this case was for arson in the second degree, under the following section of the crimes and punishment act, "Sec. 57. Every person who shall wilfully and maliciously burn, or cause to be burned, any dwelling house or building owned by himself, or the property of another, in the day time * * * * shall be deemed guilty of arson in the second degree."

Appellant claims, that although indicted under section 57, he was tried under section 58, as follows, "Sec. 58. Every person who shall wilfully burn, or cause to be burned, any building, or any goods, wares, merchandise, or other chattel, which shall be at the time insured against loss or damage by fire, with intent to injure or defraud such insurer, whether the same be the property of such person, or any other, shall upon conviction be adjudged guilty of arson in the second degree, and punished accordingly."

It is attempted to sustain this proposition by showing that the prosecution was allowed to prove that there was an overlarge insurance upon the goods of appellant destroyed by fire ; but it does not follow that the evidence was introduced to prove any crime under the section last quoted : it was entirely competent, and under the indictment tended merely, to show a possible or probable motive on appellant's part, to do an act otherwise inexplicable. The evidence in the case, which was purely circumstantial, tended to prove that a fire more fierce and sudden than natural cause would ordinarily produce, attended by a volume of very black smoke and a pronounced smell of coal oil, broke out at a very early hour in the morning in a room of appellant's store, where he alone was sleeping ; and that the fire destroyed his premises and goods and the house of the party mentioned in the indictment. There was proof tending to show acts and language of appellant before and after the fire under the circumstances

suspicious ; and then came the evidence objected to, which constituted a material and proper link in the chain.  There was the fire at a certain place, under certain surroundings, with appellant present at its inception.  Now, it is not a natural thing for a man to fire his own premises : presumptively appellant was innocent.  What then is the logical and natural course of human thought at such juncture ?  Is it not to inquire what motive, if any, existed which could have influenced a sane person to do such an act ?  Such was the course pursued by the prosecution ; the motive was sought ; and by it claimed to be found in the fact of an undue insurance ; not only a perfectly proper proceeding, but indeed the only one open.

In this view the following instructions offered by appellant, the refusing of which is assigned as error, are seen to be improper ; as they would prevent the jury from considering motive as a link in the chain of testimony.  These are the instructions :—

"1st.  That the evidence of crime arising from imputation of motive alone is inconclusive, and ought not to be considered by the jury as sufficient to authorize them in convicting the defendant, unless they, the jury, are satisfied by other evidence that the fire was intentionally created by some one with the purpose of causing the burning of some part of Hamilton and that the fire was set by Alexander Cohn, and no other person."

"2d.  That when a fire occurs which destroys property, it cannot be inferred by the jury that the same originated in the criminal design of the party who may have had an interested motive in producing such fire; but the criminal or malicious agency, as contradistinguished from accident, must be proved beyond a reasonable doubt, by facts independent of the motive of a particular person."

Of course, motive does not of itself prove guilt; nor on the other hand, is the prosecution bound to conclusive proof

of the guilty act in a particular person, or in any person, before motive can be considered. In the manner and form in which the evidence of motive was under the testimony and charge of the court presented to the jury, it was proper for them to weigh it as a unit, contributing to make up the sum total of proof; and they need not, as appellant claims, have been legally satisfied of his guilt *aliunde*, before they could consider his motive.

Morris Cohn, partner and brother of appellant, was allowed to testify to the amount and place of insurance upon their property, without production of the policies; this is said not to be the best evidence. Certainly not the best evidence of insurance; but that was not the ultimate fact sought. True, as suggested in argument, the policies might have been invalid and in fact no insurance, but that is immaterial; the fact to be proven was the belief of appellant that he was insured; and though that belief might have been entirely misplaced, still as the basis for a motive to fire his property, it continued real and true to him.

The appellant offered himself as a witness in his own behalf under the statute of this State, which provides that— "In the trial of all indictments, complaints and other proceedings against persons charged with the commission of crimes or offenses, the person so charged shall, at his own request, but not otherwise, be deemed a competent witness; the credit to be given to his testimony being left solely to the jury under the instructions of the court. Nothing herein contained shall be construed as compelling any such person to testify; and in all cases wherein the defendant to a criminal action declines to testify, the court shall specially instruct the jury that no inference of guilt is to be drawn against him for that cause." Comp. Laws, Secs. 2305–6. He was examined and cross-examined, and after his case had been rested the prosecution was allowed to recall and question him against his objection both to the recall and the

cross-examination. This is urged as unconstitutional procedure, in that it was compelling him to be a witness against himself. The objection goes generally to the entire cross-examination, and specially to the recall. As to the latter point, if he was a witness in the ordinary sense his recall was entirely within the discretion of the court; not that by or under such a recall, the prosecution did or could make the appellant its own witness, for this would indeed be to compel him to be a witness against himself; but on such recall, not in itself improper, any question might properly be put, which was legitimate cross-examination ; and in such cases if defendants occupy place as ordinary witnesses, courts would allow much latitude therein. That one offering himself as appellant did, as a witness in his own behalf, is to be held and treated as an ordinary witness, has been frequently decided under similar statutes ; and although a very highly esteemed judge and text writer (Cooley) leans the other way, the weight of reason and authority is in favor of the affirmative position. *Connors* v. *The People*, 50 N. Y. 240 ; *Brandon* v. *The People*, 42 N. Y. 265 ; *Com.* v. *Mullen*, 97 Mass. 545 ; *Com.* v. *Bonner*, 97 Mass. 587 ; *Com.* v. *Morgan*, 107 Mass. 199 ; *People* v. *Reinhart*, 39 Cal. 449. To the same effect is the recent case of *State* v. *Ober*, N. H. Aug. 14, 1873, as yet unreported, but to be found in the Chicago Legal News, of the twenty-third of the same month.

The jury in this case was selected under certain special provisions of the statute regulating such matters, which appellant claims to be unconstitutional, as depriving him of a trial by a common law jury. This is the objectionable law: "The judges of the several district courts may, by an order entered upon the minutes of their courts, prescribe bounds in their several counties, and all persons residing without such bounds may be exempted from serving on juries in the manner hereinafter prescribed." Stats. 1873, 128. That manner is by making proof of residence and

payment of twenty-five dollars. Did the establishment of bounds, as seems to be claimed by appellant, finally shut out a portion of the county and definitely fix the non-liability of citizens therefrom to jury duty, there might possibly be more weight to his argument; but it is useless to consider a non-existent condition. The result of establishing bounds is only to exempt jurors beyond them, upon payment by such exemptee of twenty-five dollars. To what extent the system or rather non-system of exemption may be carried is difficult to say; it is coeval with jury trial at common law, and has of necessity many times, and of whim or caprice many other times, been materially altered. 5 Bac. Ab. 356–8. That the exemption in question is pernicious may be admitted. It tends to impose undue jury duty upon poor men in one direction; and in another, to foster and encourage that most baneful parasite upon the body politic—the professional juryman. These might have been arguments against its passage; may be for its repeal, but do not tend to impeach its constitutionality. "To preserve the trial by jury inviolate cannot mean that we must pursue the exact course taken in England to collect jurors. If it does, what time is to be selected; for they have been constantly altering the qualifications, the exemptions and the mode of summoning jurors?" *Colt* v. *Eves*, 12 Conn. 243; *Beers* v. *Beers*, 4 Conn. 535.

The point made against the legality of the grand jury is fully and fairly answered by the district court thus: "The grounds, upon which the motion to quash the indictment was based, were the mistake in excusing Smith from the panel of the grand jury and afterwards recalling him—and the participation of Smith and Jackson in the finding of the indictment against the defendant. * * * The mistake in excusing Smith was an inadvertence which was corrected before any order excusing him was actually made. He was told he would be excused; before the order was entered he

was told he would not be excused. The court undoubtedly had the right to correct the mistake then and there, and the defendant (appellant) was in no wise prejudiced. * * The challenge to Smith and Jackson was not traversed by the district attorney at the time it was made, simply because (it is to be presumed) he intended to use them as witnesses and was willing to waive the privilege of having them serve as jurors. When afterwards, owing to his misunderstanding of the order of the court, one of the challenged jurors had been improperly present for a few moments in the jury-room during the examination of a witness against Cohn, the district attorney was permitted to traverse the challenge in order, if there were no grounds for it, to obviate the necessity of drawing a grand jury. There were no grounds for the challenge. The defendant (appellant) had the opportunity of specifying them, if any existed, and failed to do so. He had lost no right nor opportunity by reason of the original failure of the district attorney to traverse the challenge; and it was entirely within the discretion of the court, to allow the district attorney to oppose the challenge after he had originally waived the right to do so, unless the defendant (appellant) would have been thereby prejudiced. * * The fact that this defendant (appellant) was indicted for burning Jackson's house does not constitute Jackson a prosecutor against him. A prosecutor is one who instigates the prosecution by making the affidavit upon which a defendant is arrested. Jackson had made no such affidavit; and besides at the time of the challenge no charge had been made against the defendant (appellant) for burning Jackson's house." Opinion of District Court, transcript, pp. 115 and 116.

There was evidence tending to sustain the charge of the indictment: that it was entirely circumstantial does not impair its weight if it was sufficient to satisfy the jury beyond any reasonable doubt of appellant's guilt. That it was, appears from the verdict. With the jury abides the right of

decision upon the facts; and there rests the responsibility,
to be disturbed by the district court only when convinced of
error on their part. In this case the district court was not
so convinced, and refused to grant a new trial. Such act
was justified by the law and the evidence.

The order and judgment are affirmed.