Points decided.

[No. 828.]

# THE STATE OF NEVADA, RESPONDENT, v. JAMES HARRINGTON, APPELLANT.

SECTION 2306 COMPILED LAWS CONSTRUED.—Section 2306 of the compiled laws only requires the court specially to instruct the jury that " no inference of guilt is to be drawn against him for that cause" when the defendant " declined to testify." It has no application to a case where the defendant voluntarily makes himself a witness in his own behalf.

TESTIMONY OF DEFENDANT—COMMENTS OF COUNSEL.—If the defendant in a criminal case voluntarily testifies in his own behalf, the same rights exist in favor of the district attorney to comment upon his testimony, or his refusal to answer any proper question, or to draw all proper inference from his failure to testify upon any material matter within his knowledge, as with other witnesses.

OPINIONS OF WITNESSES, WHEN NOT ADMISSIBLE.—A witness for defendant having testified that just preceding the shooting, deceased had hold of the defendant; that defendant was trying to free himself, and having described the action of the parties, was asked: " What did he (deceased) appear to be doing with his hand or arm ? " the court refused to allow the question: Held, not to be erroneous, inasmuch as the witness had already stated all he saw or knew, and that the question called for an opinion, not the statement of any fact.

INSTRUCTION—HOSTILE DEMONSTRATIONS AND OVERT ACTS.—Defendant asked the court to instruct the jury that, "If the deceased made threats to the effect that he intended to kill * * * defendant, * * * and such threats had been communicated to the defendant; and if at the time and just previous to the killing, the deceased made hostile demonstrations toward the defendant, and the demonstrations * * * were such as to justify the belief that the deceased intended to carry out his threats, then the defendant would be justified in killing him, without retreating: Held, erroneous in this, that it failed to state many of the necessary elements of justification.

IDEM—MODIFICATION OF.—The court modified the instruction by inserting after "hostile demonstration " the words, "or overt act," and added to the instruction the words: "But if it does not appear that the threats were followed by any overt act, the mere apprehension of danger is not sufficient to justify homicide," and then gave the instruction as modified: Held, not erroneous.

IDEM—MEANING OF " OVERT ACTS."—The term " overt acts " as used by the court meant any act of the deceased, which manifested to the mind of a reasonable person, a present intention on his part to kill defendant, or do him great bodily harm.

INSTRUCTIONS ASSUMING FACTS, WITHOUT ALLUDING TO THE EVIDENCE.—An instruction which assumes that from former threats, the deceased, at the time of the homicide had murderous intentions," and that deceased had, previous to the killing, attempted to assault defendant, regardless of any evidence to establish such facts, is clearly erroneous.

TESTIMONY OF DEFENDANT'S BELIEF AT TIME OF HOMICIDE, ADMISSIBLE.—
A defendant charged with murder is entitled, in giving his testimony,
to state to the jury whether at the moment of the discharge of his pistol
at the deceased, he did, or did not, really believe that he was in danger
of losing his life, or of receiving great bodily harm, for the purpose of
showing the condition of his mind at the time, and for the purpose of
establishing one of the necessary conditions of justification. It being
left to the jury to weigh and consider the question whether such testi-
mony is true or false.

APPEAL from the District Court of the First Judicial Dis-
trict, Storey County.

The facts are stated in the opinion.

*A. B. Elliott and William Woodburn,* for Appellant:

I. The defendant is a competent witness for himself; and
no inference of guilt is to be drawn against him, because
he declines to testify. (1 Comp. L. 2305-6.)

II. He cannot be made a witness for the state against
himself. (*The People* v. *Tyler,* 36 Cal. 522; *The People* v.
*McGungill,* 41 Cal. 429.)

III. The fact that counsel for defendant made no objec-
tion at the time, to the argument of the district attorney,
cannot affect the substantial rights of the defendant. (*The
State* v. *Pierce,* 8 Nev. 304.) It was the duty of the court
to have interposed the objection, and to have instructed the
jury on the subject. (Comp. Laws, sec. 2306.)

IV. The instruction that if the jury believed "defendant's
life had been repeatedly threatened," etc., should have been
given. (*The State* v. *Kennedy,* 7 Nev. 377; *The State* v.
*Hall,* 9 Nev. 61; *The State* v. *Stewart,* 9 Nev. 130; *The State*
v. *Smith,* 10 Nev. 118; *The State* v. *Ferguson,* 9 Nev. 116;
*People* v. *Scoggins,* 37 Cal. 676; 32 Iowa, 36; 8 Bush, Ky.,
481; 46 Ill. 17; 47 Mo. 604; 2 Bishop on Criminal Law, 3d
ed. sections 383, 384, 636, 644; 17 Ala. 587; *Phillips* v.
*Commonwealth,* Cases on Self-defense, 383; *Grainger* v. *The
State,* Id. 238.)

V. The court erred in refusing to allow defendant to tes-
tify as to his belief of danger at the time the fatal shot was
fired. The authorities require that defendant must show
that he did believe his life was in danger. The testimony

should have been submitted to the jury for what it was worth. As bearing upon the admissibility of this evidence, see *People* v. *Farrell*, 31 Cal. 583; *State* v. *Newton*, 4 Nev. 412.

VI. The court erred in modifying the instruction in regard to "overt acts." (*State* v. *Kennedy*, 7 Nev. 376; *Jackson* v. *State*, Cases on Self-defense, 481; *Little* v. *State*, Id. 490; *Phillips* v. *The Commonwealth*, Id. 383; *The State* v. *Stewart*, 9 Nev. 130.)

*John R. Kittrell, Attorney-General,* for Respondent:

There was no error in the court below sustaining the objection to the question asked the defendant while he was testifying in his own behalf, as to whether, at the time of firing the fatal shot, he believed his life to be in danger, etc. The question complained of, called only for the opinion or conclusion of the defendant; and that, too, at a time long subsequent to the occurrence, and to a matter exclusively in the defendant's secret mind, and which it was impossible for the prosecution to ascertain the truth of or even attempt to rebut. When a defendant offers himself as a witness he is subject to, and governed by, the same rules that apply to other witnesses. (See *Cohn's Case*, 9 Nev. 179.) He cannot testify that he believed himself in imminent danger. Whether such belief, in fact existed at the time, can only be properly arrived at and determined by the jury, from the acts of the parties, and the circumstances attending the affray. The assertion of the defendant as to his belief is no evidence of the fact. (1 Wharton on Crim. L., 7th ed., sec. 712, note "M.;" or Stephens Crim. L., 304-5.)

*R. H. Lindsay,* also for Respondent:

If defendant refuses to testify, the statute protects him from adverse comment or inference; but if he avails himself of the statute, he waives the constitutional protection in his favor, and subjects himself to the peril of being examined as to any and every matter pertinent to the issue. (*Commonwealth* v. *Mullen*, 97 Mass. 545; *Commonwealth* v. *Bonner*, 97 Mass. 587; *Commonwealth* v. *Morgan*, 107 Mass.

199; *McGarvy* v. *The People,* 2 Lansing, 227; *Conners* v. *The People,* 50 N. Y. 240.)

By electing to testify, the defendant placed himself in the attitude of any ordinary witness irrespective of any interest in the cause. (*Norfolk* v. *Gaylord,* 28 Conn. 309.) It was not improper for the district attorney to comment upon the testimony of defendant. (*Andrews* v. *Frye,* 104 Mass. 234.)

By the Court, LEONARD, J.:

This is an appeal from the judgment of the district court of Storey county, rendered against appellant December 16, 1876, and from an order of said court denying his motion for a new trial. Appellant was accused and convicted of murder of the first degree in killing one John C. Sullivan, in said county, on or about July 22, 1876.

The record contains no formal motion for a new trial, nor are the grounds thereof embodied in the bill of exceptions; but all the errors alleged can be examined by this court on appeal from the judgment.

First. The bill of exceptions shows that without objection on the part of defendant, one Merrow, at the trial, testified as follows: "I was deputy constable of township No. 1, in this county, at the time this trouble occurred; I made the arrest; I had a conversation with Harrington, the defendant, in regard to the matter; I asked him what he did it for; he told me that Sullivan tore his coat; that is all the reason he gave; that is all he said." Subsequently defendant was called and sworn as a witness. He testified in his own behalf, but did not testify in relation to the matter stated by witness Merrow.

Counsel for defendant, in his argument before the jury, which preceded that of the district attorney, claimed and argued that the statements of witness Merrow were false. The district attorney in his reply, without objection on the part of counsel for defendant or the court, stated to the jury "that, inasmuch as the defendant, when testifying in his own behalf, had not contradicted the statement of Merrow, they must take said statement as absolutely true, that therefore it was true."

The action of the district attorney in so addressing the jury, and of the court in failing to interpose objection thereto, is assigned as error. Appellant also claims the court should have instructed the jury as provided in section 2306, C. L., when the defendant declines to testify.

Under the constitution of this state, no person accused of a crime can be compelled to testify against himself; but under the statute, at his own request, but not otherwise, he shall be deemed a competent witness, the credit to be given to his testimony being left solely to the jury, under the instructions of the court. The statute further provides, that in all cases wherein the defendant in a criminal action declines to testify, the court shall specifically instruct the jury that no inference of guilt is to be drawn against him for that cause. (Comp. Laws, secs. 2305–6.) Courts have nothing to do with the wisdom or policy of a statute. Their only duty, in a proper case, is to enforce it.

Under the statute mentioned, in a case wherein the defendant in a criminal action declines to testify, the court shall specially instruct the jury as prescribed in the act. Certainly, there is nothing in the statute requiring the court to so instruct the jury in a case wherein he does not decline to testify; but, on the contrary, wherein he voluntarily makes himself a witness in his own behalf, as in this case. A defendant on trial in a criminal action, in this state, may plead not guilty, and thereafter sit in silence, or he may, at his option, testify for himself. If he chooses the latter course, he is to be held and treated, so far as his testimony goes, like any other witness. He cannot be cross-examined beyond the subject-matter upon which he has been examined in chief, for the reason that with him, as with other witnesses, the rules of evidence do not permit it; and, too, because such a proceeding would be compelling him to become a witness for the prosecution against himself. (*People v. McGungill*, 41 Cal. 430.) "If he does not choose to avail himself of the statutory privilege, unfavorable inferences cannot be drawn to his prejudice from that circumstance; and if he does testify, he is at liberty to stop at any point he chooses, and it must be left to the jury to give a state-

ment, which he declines to make a full one, such weight as, under the circumstances, they think it entitled to." (Cooley's Const. Lim. 317.)

In a note subsequently written, in referring to the text above quoted, Judge Cooley says: "What we intend to affirm by it is, that the privilege to testify in his own behalf is one the accused may waive, without justly subjecting himself to unfavorable comments; and that if he avails himself of it and stops short of a full disclosure, no compulsory process can be made use of to compel him to testify further. It was not designed to be understood that in the latter case his failure to answer any proper question would not be the subject of comment and criticism by counsel; but, on the contrary, it was supposed that this was implied in the remark that 'it must be left to the jury to give a statement, which he declines to make a full one, such weight as, under the circumstances, they think it entitled to.' All circumstances which it is proper for the jury to consider it is proper for counsel to comment upon." (See, also, *State* v. *Ober*, 52 N. H. 462; *State* v. *Cohn*, 9 Nev. 179; *State* v. *Huff*, 11 Nev. 27; *Connors* v. *People*, 50 N. Y. 240.) As affecting the right of the jury to consider, or of counsel to comment upon, the circumstances, we can perceive no difference between the refusal of defendant to answer a proper question upon cross-examination and neglecting to testify upon some material matter within his knowledge, proven against him by the prosecution.

The authorities are somewhat conflicting upon the question whether or not, if the defendant in a criminal case voluntarily testifies, he can be compelled upon cross-examination to answer a proper question concerning any fact upon which he testified in chief. It being unnecessary to decide the question in this case, we express no opinion upon it.

Our conclusions are that, if the defendant in a criminal action voluntarily testifies for himself, the same rights exist in favor of the State's attorney to comment upon his testimony, or his refusal to answer any proper question, or to draw all proper inferences from his failure to testify upon

any material matter within his knowledge, as with other witnesses.    Nor are the two cases cited by counsel for appellant (*People* v. *Tyler*, 36 Cal. 522; *People* v. *McGungill*, 41 Cal. 429,) opposed to our conclusions.

In the first case, defendant did not avail himself of the right conferred by statute, and offer himself as a witness in his own behalf.    He did not testify.    The district attorney, in his argument before the jury, called attention to the fact that the defendant had not testified in his own behalf, and argued and insisted before the jury that the silence of the defendant was a circumstance strongly indicative of defendant's guilt.    Defendant's counsel objected to this course of argument, and requested the court to require the district attorney to refrain from urging such inference, but the court declined to interfere, and intimated that the law justified the counsel in the course pursued.    The district attorney continued to urge before the jury that the silence of the defendant was a circumstance against him, and the defendant excepted.

At the close of the argument, defendant's counsel asked the court to instruct the jury that no inference of defendant's guilt should be drawn from the fact that he did not testify in his own behalf, but the court refused to so instruct.    The court on appeal very properly held, upon such a state of the case, that the court below erred in permitting the district attorney to pursue the line of argument to which objection was taken, and especially in refusing to give the instruction asked.

In the second case, the defendant offered himself as a witness in his own behalf, and was only asked if he had had certain conversation with one Yates, testified to by said Yates, and he answered that he had not.    He was examined no further by his counsel than concerning such conversation, nor was he examined upon any other point, but answered all questions required of him by the court.    Upon the argument, counsel for the prosecution commented upon the fact, before the jury, that the defendant refused to be cross-examined as to the whole case.    Defendant's counsel protested against such comments, but they were continued by permission of

the court. The appellate court held that such action by the court below was error. No witness under the circumstances stated could have been cross-examined as to the whole case. If the court had compelled defendant to answer beyond the line of legitimate cross-examination, its action would have been error in a double sense: first, in allowing counsel to press in cross-examination further than is permissible in other cases; second, in compelling defendant to furnish, against his will and contrary to law, testimony for the prosecution. Defendant only claimed the rights of an ordinary witness under established rules of evidence. Counsel for the prosecution, by permission of the court, and against the rightful protest of defendant, contrary to the fact, construed a legitimate exercise of a legal right to be evidence of defendant's guilt.

It need not be stated that the facts of the two cases cited and the one in hand are so widely different that the former are no authority for appellant in this case.

In addition to the foregoing, it is proper to remark that it is apparent to our minds, from the bill of exceptions, that the comments of the district attorney complained of were called out by those of the defendant's counsel in declaring the testimony of witness Merrow to be false. In reply, the district attorney, to sustain the witness, and to show the truthfulness of his testimony, stated that the defendant, although he had an opportunity to do so, had not contradicted the witness. The comments, under the circumstances, were proper.

Second. At the trial, one Nelson, a witness for the defendant, testified that just preceding the shooting, deceased had hold of the defendant by the coat-sleeve or shoulder, and that defendant appeared to be trying to free himself; that defendant made a motion as if to strike deceased. Witness then testified as follows: "Sullivan made a motion; I can't tell what he was doing; his back was toward me; he raised his hand up; his elbow appeared to be about that high. [The witness here raised his hand to show; the right hand being high up, opposite his left breast, and the right elbow being extended to the right of his body.] I could not see

where his hand was, because I was right behind him, and a little ways from him." Counsel for defendant then asked witness the following question, viz.: "What did he appear to be doing with his hand or arm?" The district attorney objected, on the ground, that the question was incompetent and irrelevant, inasmuch as it called for the opinion of the witness. The question was clearly incompetent. The witness had already stated all he saw or knew. He had, by word and act, given the jury and court all the facts in his possession. What else could he say but to give his opinion of what deceased was doing? He was called to testify to facts, not give opinions or belief.

Third. Appellant complains of the definition of murder of the first degree given by the court to the jury. We are satisfied that the different instructions given by the court properly defined the crime mentioned, and that the jury could not have been misled thereby. (*State* v. *Stewart,* 9 Nev. 131.)

Fourth. Defendant 'scounsel asked the court to give the following instructions to the jury: "If the deceased made threats to the effect that he intended to kill, or do the defendant great bodily harm or injury if he did not stop keeping company with Julia Regan, and such threats had been communicated to the defendant; and if at the time and just previous to the killing, the deceased made hostile demonstrations toward the defendant, and the demonstrations and circumstances connected therewith were such as to justify the belief that the deceased intended to carry out his threats, then the defendant would be justified in killing him without retreating."

The court modified this instruction by inserting after the words "hostile demonstrations" the words "or overt act," and added at the end the following: "But if it does not appear that the threats were followed by any overt act, the mere apprehension of danger is not sufficient to justify homicide." As modified, the court gave the instructions to the jury.

As presented, it was erroneous for several reasons. It gave, as the only necessary test of justification, previous

threats communicated to defendant, and hostile demonstrations and circumstances connected therewith, before and at the time of the killing, which justified the belief that the deceased intended to carry out his threats.　It is plain that many of the necessary elements of justification are wanting in the instruction.

In *State* v. *Stewart*, 9 Nev. 130, the court say: "Mere threats, unaccompanied by some demonstrations of hostility, from which the accused might reasonably infer the intention of their execution by deceased, would not justify the homicide.　Nor would acts of hostility, however violent of themselves, excuse the slayer.　There must be some overt acts or words at the time, clearly indicative of a present purpose to do the injury.　The defendant must show either that he was actually assailed, or that he was menaced by the deceased at the time, in such a manner as to induce him as a reasonable person to believe that he was in danger of receiving great bodily harm." (*State* v. *Hall*, 9 Nev. 58; *People* v. *Scoggins*, 37 Cal. 683.)

This instruction was also lacking the further and indispensable qualification that the defendant acted under the influence of fears excited by such threats, hostile demonstrations and circumstances, and not in a spirit of revenge.

Appellant claims that the instruction as modified must have conveyed to the minds of the jury the idea that the words "overt acts" meant only such acts as striking or assailing.　This view is clearly erroneous.　The term "overt acts" as used by the court meant any acts of the deceased, which manifested to the mind of a reasonable person, a present intention on his part to kill defendant, or do him great bodily harm.　If there is any error in the modified instruction it is because it is too favorable to appellant.

Fifth.　The court refused to give the following instruction to the jury, which refusal is claimed as error, to wit: "If you believe from the evidence that the defendant's life had been repeatedly threatened by the deceased, then the defendant may lawfully arm himself to resist the threatened attack; he may leave his home for the transaction of his

legitimate business or for any lawful or proper purpose, and if on such an occasion he met the deceased, and had reason to believe him to be armed and ready to execute his murderous intention; and if the defendant, from the threats, any attempted assault previous to the killing, and the circumstances attending the meeting, had reasonable ground to believe, and did believe, that the presence of deceased put his life in imminent peril, then he would not be obliged to wait until he was actually assailed, but may kill, and it will be justifiable. He could not, under such circumstances, hunt the deceased and shoot him down like a wild beast, nor has he the right to bring about an unnecessary meeting in order to have a pretext to slay him; but neither reason nor the law demands that he shall give up his business and abandon society to avoid such meeting and the killing of his adversary."

This instruction assumes that from former threats the deceased, at the time of the fatal meeting, had "murderous intentions," regardless of the evidence. Such assumption is unwarranted. It would have instructed the jury to justify defendant in shooting deceased, because of "former threats, any attempted assault previous to the killing, and the circumstances attending the meeting, if defendant had reasonable ground to believe and did believe that the presence of deceased put his life in imminent peril," even though defendant was in the wrong and the first assailant. It assumes, regardless of any proofs to establish the fact, that deceased had, previous to the killing, attempted to assault defendant. It was properly refused.

Next and last, appellant complains of the action of the court in refusing to allow him, when testifying as a witness in his own behalf, to answer the question hereafter stated. The bill of exceptions shows the following: "Counsel for defendant then asked defendant the following question: 'At the moment of the discharge of the pistol at the deceased did you, or did you not, really believe that you were in danger of losing your life, or receiving great bodily harm?' To which question the district attorney objected, for the reason that the question was irrelevant and incompetent,

inasmuch as it was the province of the jury to determine whether or not, from the attending circumstances, a reasonable man would believe himself in danger of losing his life, and the court sustained the objection. To which ruling of the court the defendant, by his counsel then and there duly excepted."

Let it be borne in mind that appellant's defense was justifiable homicide. He admitted the killing of deceased, but claimed it was done in necessary self-defense. In order to justify himself he was, by his own proofs, compelled to bring himself within the terms of sections 25 and 26 of the crimes and punishments act, which read as follows:

"Section 25. Justifiable homicide is the killing of a human being in necessary self-defense, or in defense of habitation, property or person against one who manifestly intends, or endeavors, by violence or surprise, to commit a felony, or against any person or persons who manifestly intend and endeavor, in a violent, riotous, or tumultuous manner, to enter the habitation of another for the purpose of assaulting or offering personal violence to any person dwelling or being therein.

" Section 26. A bare fear of any of these offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge."

Under the two sections of the statute just quoted, it is evident that, before the defendant could have been justified by the verdict of the jury, it must have appeared to their minds, from all the testimony in the case, not only that the defendant was at the time surrounded by such circumstances as were sufficient to excite the fears of a reasonable person, but also that he really acted under the influence of those fears, and not in a spirit of revenge. It was just as necessary for the testimony to show that his mind was in accord with the last condition stated in section 26 as with the one preceding. In other words, if the jury had been satisfied from all

the testimony in the case, that the circumstances surrounding defendant at the time, were sufficient to excite the fears of a reasonable person, still they could not have justified him by their verdict, without being satisfied from the evidence that he really acted under the influence of the fears mentioned in the statute, and not in a spirit of revenge. In arriving at a conclusion as to whether a defendant accused of murder really acted under the influence of such fears, and not in a spirit of revenge, jurors oftentimes would, and properly too, consider that, even though the circumstances were sufficient to excite the fears of a reasonable person, yet he did not so act, but that he really acted in a spirit of revenge. They might conclude that the circumstances, ostensibly sufficient to justify his fears as a reasonable person, were, in fact, made so by the defendant for the sole purpose of justification, when really he acted in the spirit of revenge.

Suppose two men have for a long period been deadly enemies, and at last one kills the other under circumstances apparently sufficient to justify the fears of a reasonable man; certainly, under such circumstances, any juror would more readily believe that the homicide was committed in a spirit of revenge than if they had always been friends prior to the killing. In this case, the killing having been admitted by defendant, and the burden of proof having been upon him in some manner to show that he really acted under the influence of the fears stated in the statute, and not in a spirit of revenge, he had the indisputable right to strengthen other testimony by his own, under oath, in the presence of the jury, that at the time of the fatal shot he really believed his life was in danger, or that he was in danger of receiving great bodily injury. It was a fact proper to be considered and weighed by the jury, as to what the condition of his mind was at the time; and who so well knew in what spirit and with what motive he acted as defendant?

It is true that a defendant in a criminal action has inducements to misstate the motives that actuated him, as well as his beliefs at the time. So he has relative to any other fact. The law, however, does not make that a reason

why he shall not be allowed to make his statement to the jury upon all matters concerning which he has a right to testify, and let the jury judge of the veracity of his testimony.

Besides, several of the instructions given by the court make it an essential pre-requisite to defendant's justification that he "did believe" he was in danger of losing his life or of receiving great bodily harm, as well as that, as a reasonable person, he had reason to so believe.

The court instructed the jury in part as follows: "The law of self-defense is founded on necessity, and in order to justify the taking of life upon this ground, it must not only appear that defendant had reason to believe, and did believe, that he was in danger of his life, or of receiving great bodily injury; but it must also appear to the defendant's comprehension, as a reasonable man, that to avoid such danger it was necessary for him to take the life of the deceased.

"If you believe from the evidence that the defendant had reason to believe, and did believe that he was in danger of his life, or of receiving great bodily harm, and you further believe that it also appeared to defendant's comprehension, as a reasonable man, that to avoid such danger it was necessary for him to take the life of John C. Sullivan, such killing would be in self-defense, and you should acquit the defendant."

Thus the jurors were instructed, as the statute provides, that one of the necessary elements of justification was that he did so believe.

We are entirely satisfied that for the purpose of showing the condition of his mind at the time, and to establish one of the necessary conditions of justification, defendant had the right to answer the question objected to, and that it was for the jury to consider it like all other testimony proper to be given in the case.

In *People* v. *Farrell* (31 Cal. 576), the court say: "The rule that the intent must be inferred from the acts and words of the party had its foundation in necessity created by the rule which excluded parties in interest from the witness stand. That necessity is now removed by the abroga-

tion of the rule which created it, and the legal tenet that actions must speak for themselves, and words furnish their own interpretation is much modified, if not wholly abrogated, by the recent innovation upon the common law by which parties are allowed to testify in their own behalf. Before that time, there was no way of ascertaining the motives and intentions of parties, except by inference from their acts and sayings, and all experience shows that they may frequently, if not at all times, prove very imperfect guides. * * * It is no answer to say that this enables a party to substitute a false motive for a true one, or to convert words spoken in one sense into another. If the argument proves anything, it proves too much, and shows that the radical change which has been made is in all respects founded in folly rather than wisdom. For the truthfulness of parties when upon the witness stand, we must depend, as in the case of other witnesses, upon the obligation of their oaths, and their reputation for truth and veracity. If these can be relied upon for the truth of statements made in reference to acts and words of which the eye and ear may take notice, they may, for the same reason, be accepted as guarantees for the truth of statements made in respect to motives and intents of which the mind or inner man alone can take cognizance. Nor is there, in our judgment, any well-grounded reason for apprehending that this rule will obstruct rather than advance the ends of justice. There is no more danger of imposing upon the jury falsehood or pretense, in respect to motives and intents, than there is of doing the like in respect to visible or external circumstances. The jury can as readily distinguish between the false and true in respect to the former as the latter. If the motive or intent assigned is inconsistent with the external circumstances, it must be discarded as false. If, on the contrary, they are consistent, there is no reason why they may not be true." (*State* v. *Stewart*, 9 Nev. 132; *People* v. *Williams*, 32 Cal. 285; 1 Bish. Crim. Law, 6th ed., sec. 305.)

For this error, the judgment of the court below is reversed, and a new trial ordered.